JOHN WARD v. CHRISTIAN COUNTY, Appellant.—111 S. W. (2d) 182.

Division One, December 14, 1937.

*Joseph C. Crain* and *Tom R. Moore* for appellant.

*G. Purd Hays* for respondent.

HYDE, C.—This is an action to recover $1325 (first count of petition), alleged to be due plaintiff for salary as county clerk; and to recover an additional sum of $1750 (second count), claimed to be due plaintiff for allowance for assistants in said office. The court found for plaintiff on the first count for $1325, but found in favor of the county on the second count as to the additional allowance claimed.

Plaintiff did not appeal from the adverse finding on his second count. The county has appealed from the judgment entered.

The first count of plaintiff's petition alleged that during his first two years in office (1931-1932) his "salary was $1950.00 per annum, based upon the total number of votes cast in said county at the Presidential Election in 1928, multiplied by five, as prescribed in Section 11808, R. S. 1929;" that, on the basis of the 1932 election thus calculated his "salary was $2000.00 per annum for 1933 and 1934;" and that, except for the first half of 1931, "the county court . . . only paid plaintiff . . . the sum of $1600.00 per year." The answer was a general denial and also made certain specific denials. The judgment recites:

"This being an action for back salary, whereby plaintiff's demand is ascertained, the court doth assess the amount due and owing from defendant on count one of plaintiff's petition, at the sum of $1325.00."

Plaintiff's brief here states: "When the law fixes the amount a county clerk or any officer is to be paid it is then a salary." It therefore seems clear that plaintiff's theory and the basis of the court's decision was that plaintiff was entitled to a fixed salary, regardless of any showing concerning fees.

Defendant has narrowed the issues here by admitting that "the proper method to determine the population before the Act of 1933 (Laws 1933, p. 369) was passed was by multiplying (the total vote) by five;" that "an officer receiving a smaller salary is not estopped from claiming a larger one;" and that "if the population justifies an increase it can be had before his term expires." Nevertheless, defendant says that plaintiff "during the four years he has sued for salary due, was on a fee basis, pure and simple, and was allowed to retain so much for himself and his deputy out of the fees of the office, but under no statute or law was entitled to a fixed salary as claimed herein and sued for;" and that, therefore, he "must look to the fees of his office for his compensation." Defendant offered a declaration of law stating this theory of the case which was refused by the court. Defendant assigns this refusal as error, but also contends that its declaration in the nature of a demurrer to plaintiff's evidence should have been sustained because plaintiff failed to show that the fees of his office for any year exceeded the amount ($1600) he actually did receive.

In the trial of the case, plaintiff only undertook to show his qualifications and service during the term stated, the total amount he received each year, and the total vote cast at the elections of 1928 and 1932. Defendant, over plaintiff's objection, put in evidence plaintiff's quarterly reports of fees collected in cash, his yearly abstract thereof, and settlements thereon with the county court. The total sums of these itemized fees shown to have been collected in cash by

**1118**

plaintiff were $1104.55 in 1931, $972.87 in 1932, $755.97 in 1933, and $584.81 in 1934. He retained these fees aggregating $3418.20, and in addition thereto, received $3380.35 on warrants issued to him by the county court, and was allowed $26.45 more at the end of his term. The county court also issued warrants for the full amount received by his deputy clerk, which amounted to $3750. (Plaintiff had only one assistant.) Plaintiff never made any itemized reports of fees he claimed to have earned but had not collected in cash. The annual settlements show that plaintiff (in addition to the amounts allowed for his deputy) received $1600 for each of the last three years of his term, and $2025 for his first year, which included an additional allowance of $250 for deputy hire. He also received $400 paid to him by the court ($100 each year) for making financial statements, making the total amount he received for his term $7225.

■ "It is well-settled law that a right to compensation for the discharge of official duties is purely a creature of statute, and that the statute which is claimed to confer such right must be strictly construed." [State ex rel. Linn County v. Adams, 172 Mo. 1, 72 S. W. 655.] Section 11811, Revised Statutes 1929, fixes the compensation of county clerks. Plaintiff relies upon statements in State ex rel. O'Connor v. Riedel, 329 Mo. 616, 46 S. W. (2d) 131, that "in a generic sense, the word 'fees' (in the Constitution) implied compensation or salary;" and that "when a limit was placed (by statute) on the amount of fees an officer might retain that maximum was *regarded* as his salary." However, the O'Connor case clearly recognizes that, by such statutes, "'fees' if used in its narrow, distinctive sense" signifying "the compensation for particular acts or services rendered . . . in the line of their duties . . . was the source of" these maximum allowances "*regarded*" as salary. Plaintiff overlooked this distinction and proceeded on the theory that such "fees," if not collected in cash, need not be reported to the county court in detail as a basis for and source of his compensation.

■ On the basis of the Christian County vote in 1938 and 1932, computed as provided in Section 11808, Revised Statutes 1929, the applicable portion of Section 11811 is, as follows:

"The aggregate amount of *fees* that any clerk under articles 2 and 3 of this chapter *shall be allowed to retain* for any one year's services shall not in any case exceed the amount hereinafter set out. . . . In all counties having a population of twenty-five thousand and less than thirty thousand persons, the clerks *shall be permitted to retain* two thousand dollars for themselves, and be allowed to pay for deputies or assistants not exceeding fifteen hundred dollars. In all counties having a population of twenty thousand and less than twenty-five thousand persons, the clerks *shall be permitted to retain* nineteen hundred and fifty dollars for themselves, and be allowed to pay for deputies or assistants not exceeding twelve hundred dollars."

"We find that in 1909 there was only one statute fixing the compensation of both circuit clerks and county clerks. It allowed both clerks to retain fees for any one year's services up to certain amounts in counties of various classifications. [Sec. 10722, R. S. 1909.] The salaries (or compensation to be retained) fixed by this section were increased by the Legislature in 1913. [See Laws 1913, p. 702.] In 1915 this section was repealed, in so far as it applied to circuit clerks, by an act entitled: 'An act changing the method of payment of salaries of clerks of circuit courts, except in any county wherein the clerk of the circuit court is *ex-officio* recorder of deeds.' [Laws 1915, p. 378.] It would seem that this act intended to take circuit clerks entirely out of Section 10722, Revised Statutes 1909, because the repealing clause states: 'The salaries provided for in this act shall be in lieu of the aggregate amount of fees which clerks of the circuit court are permitted to retain for their services, and for the payment of deputies, under and by virtue of Section 10722 of the Revised Statutes of 1909.' (Sec. 5.) In State ex rel. Moss v. Hamilton, supra (303 Mo. 302, 260 S. W. 466) this court so construed it, saying: 'In the act of 1915, supra, clerks of the circuit court and their deputies were placed upon a salary basis, rather than the old fee basis theretofore existing.'" [Perkins v. Burks, 336 Mo. 248, 255, 78 S. W. (2d) 845.]

This section was not changed, repealed or amended, prior to plaintiff's term, to put either county clerks or their deputies on a salary basis, regardless of the fees of the office. (It now has been by Laws 1937, p. 440.) Whether the amounts allowed to a county clerk by this section be called fees, compensation or salary, the plaintiff had the burden to show that his fees exceeded the amounts he received (including the allowance paid to his deputy) and equaled the total amount, which he claimed to be entitled to receive. The cash fees which he collected from persons doing business with his office only amounted to about one-half of what he did receive for his own compensation. It was for him to show, as an essential part of his case that the county owed him fees sufficient to make up the difference. Defendant's contention seems to be that he was entitled to nothing more than the fees he reported as collected in cash. ■ However, Section 11781, Revised Statutes 1929, allows fees for many services not performed for third persons. Necessarily these are chargeable to the county and should be paid by the county to the clerk (or his deputy) up to the amounts allowed by Section 11811 for the compensation of the clerk and his deputies. But to be entitled to payment of these fees from the county, the clerk must report them to the court and obtain its approval of his charge, as in the case of any other account.

■ According to defendant's admissions, plaintiff would have

been entitled to the maximum amounts above set out in Section 11811, claimed by him for each year of his term, if the fees he was entitled to receive from the county, added to the fees he collected in cash, reached that total amount each year.  Nevertheless, plaintiff is not entitled to a judgment therefor on this record because he failed to show what fees he was entitled to receive from the county.  Plaintiff made no itemized statement of fees chargeable to the county in any of his reports.  He did show a lump sum on each quarterly report stated as "fees earned."  An annual total of the four lump sum quarterly amounts was also set out in the annual abstract of fees. These lump sums do not prove themselves.  No one can know what plaintiff thought it was proper to include therein as chargeable to the county. ꞏ There is nothing to show what service was performed; to give information as to whether the charges come within the allowances authorized by Section 11781, Revised Statutes 1929, or any other section; or to afford any basis for the county court to "audit, adjust, and settle" with the clerk therefor as required by Section 12162, Revised Statutes 1929. Some fees are left to the discretion of the county court to be fixed "as may be deemed just and reasonable." [Sec. 12183, R. S. 1929;  Callaway County v. Henderson, 119 Mo. 32, 24 S. W. 437.]   No other person or court could determine the amount of such fees.

█ Approval of the quarterly reports of fees, collected by the plaintiff, by allowance thereof to him in the annual settlements (which is the only approval shown) "is final only as to the fees actually reported."   [U. S. Fidelity & Guaranty Co. v. Huckstep (Mo. App.), 72 S. W. (2d) 838.]   The most that could be made out of these settlements, as an approval of fees reported in lump sum, would be an approval up to the amounts the county court actually authorized to be paid to plaintiff for his own compensation and that of his deputy.  This could not show that plaintiff was entitled to any more than he actually got, and the presumption of right action on the part of the court, in the absence of proof to the contrary, is against him.   [See Waterman v. Chicago Bridge & Iron Works, 328 Mo. 688, 41 S. W. (2d) 575.]   However, Section 11810, Revised Statutes 1929, requiring the clerk to make a quarterly return to the county court provides that "such statement shall include all fees for all services of whatever character done in his official capacity."   This court, in Callaway County v. Henderson, supra, said that "from this section it is plain the clerk must report *all fees for all services* rendered in his official character;  and it was speaking therein of a fee chargeable to the county, namely, an allowance under Section 3207, Revised Statutes 1889, now Section 12183, Revised Statutes 1929.  Section 11811 (as amended Laws 1937, p. 440) now provides that "it shall be the duty of the clerks of county courts.

to charge and collect in all cases every fee accruing to their offices by law, *except such fees as are chargeable to the county*, and  . . . file with the county court a report of all fees charged and collected.'' Obviously the purpose of this change was to eliminate from the clerk's report of fees those *chargeable to the county* because such fees would no longer serve as the source of his compensation. Certainly it also shows the Legislature understood that the law, as it previously read, required them to be reported. Moreover, Section 12161, Revised Statutes 1929, makes it the duty of the county clerk ''to keep just accounts between the county and all persons, bodies politic and corporate, chargeable with moneys payable into the county treasury, or that may become entitled to receive moneys therefrom.'' Certainly, without any other statutes, this would require him to keep a just account between the county and himself. We must, therefore, hold that plaintiff, by failing to show report and approval of sufficient fees, failed to prove that he was entitled to be paid by the county any more than the total amount actually received by or paid to him for his own compensation and that of his deputy.

The judgment is reversed. *Ferguson* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur, except *Hays, C.J.*, *absent*.