STATE OF MISSOURI on the Information of J. E. TAYLOR, Attorney General, Relator, v. FRED H. KIBURZ, JR.—No. 40542.—208 S. W. (2d) 285.

Court en Banc, December 27, 1947.

Rehearing Denied, February 9, 1948.

J. E. Taylor, Attorney General, C. B. Burns, Jr., Wm. C. Cockrill and Will F. Berry, Jr., Assistant Attorneys General, for relator.

Erwin F. Vetter, County Counselor of St. Louis County, for respondent.

[287] LEEDY, C. J.—Original proceeding by information in the nature of quo warranto filed by the Attorney General to determine respondent Kiburz's title to the office of highway engineer of St. Louis County. The case has been submitted on the information, return, and relator's motion for judgment on the pleadings. In justification of his right to the office, respondent relies on his appointment thereto by the county court of St. Louis County, made June 23, 1947, for a term beginning that day and ending December 31, 1948, pursuant to which he was commissioned, qualified, and is now acting. The ultimate question is whether the power of appointment resided in the county court, and this turns upon the construction to be given certain provisions of the Constitution and of the statutes.

Factually, respondent's appointment was occasioned by the death of the county surveyor, Ray Jablonsky, on June 13, 1947. Jablonsky had been elected at the general election in November 1944, and assumed office the following January. As county surveyor he also became ex officio county highway engineer by force of what will be hereinafter referred to as the "second proviso" of Sec. 8660 R. S.

'39 and Mo. R. S. A.[1]  [This and all other references to statutes are to R. S. Mo. '39, and to the corresponding section numbers in Mo. R. S. A., unless otherwise expressly noted.]  Relator urges, as a matter of first insistence, that such second proviso was in effect on the date of respondent's purported appointment, and will continue so to be until the date of the expiration of the term for which Jablonsky was elected, to-wit, December 31, 1948, and this primarily because of the provisions of Sec. 3 of the Schedule appended to the Constitution of 1945,[2] which became effective March 30, 1945 during Jablonsky's incumbency.  Conversely, respondent admits that if the second proviso was so in effect, then his title to the office must fail.  His position is that the question is governed by Sec. 8655, and certain provisions of the new Constitution and a series of bills enacted by the 63rd General Assembly implementing the same, and conforming thereto a statutory scheme in relation to surveyors and highway engineers; and that, in any event, the so-called "second proviso" of Sec. 8660 is inconsistent with Sec. 8, Art. VI of the new Constitution[3] and so became inoperative July 1, 1946, under the italicized portion of Sec. 2 of the Schedule of the new Constitution.[4]

Sec. 8, Art. VI of the 1945 Constitution introduced into the organic law a new requirement with respect to legislation governing the structure of county government, and so necessitated a general overhauling of the whole body of statute law concerning that subject, for absent classification of counties (and none existed theretofore within the meaning of this constitutional provision), there could be no valid legislation [288] governing their organization and powers, subsequent to July 1, 1946.  In obedience to this constitutional mandate,

---

[1]"Provided, however, that in all counties in this state which contain or which may hereafter contain more than fifty thousand inhabitants, and whose taxable wealth exceeds or may hereafter exceed the sum of forty-five million dollars, and which adjoin or contain therein, or may hereafter adjoin or contain therein, a city of more than 100,000 inhabitants by the last decennial census, the county surveyor shall be ex officio county highway engineer."  Sec. 8660.

[2]"The terms of all persons holding public office to which they have been elected or appointed at the time this Constitution shall take effect shall not be vacated or otherwise affected thereby."  Sec. 3, Schedule to 1945 Constitution of Mo.

[3]"Provision shall be made by general laws for the organization and classification of counties except as provided in this Constitution.  The number of classes shall not exceed four, and the organization and powers of each class shall be defined by general laws so that all counties within the same class shall possess the same powers and be subject to the same restrictions.  A law applicable to any county shall apply to all counties in the class to which such county belongs."  Sec. 8, Art. VI, Constitution of 1945.

[4]"All laws in force at the time of the adoption of this Constitution and consistent therewith shall remain in full force and effect until amended or repealed by the general assembly.  *All laws inconsistent with this Constitution, unless sooner repealed or amended to conform with this Constitution, shall remain in full force and effect until July 1, 1946.*"  Sec. 2, Schedule.

the 63rd General Assembly enacted Committee Substitute for House Bill 476 (effective December 5, 1945, because of an emergency clause), which classified all of the counties of the state into four classes, basing the same on assessed valuation, and declaring such classification to be "the foundation upon which the whole structure of county government and laws relating thereto rests." Laws 1945, p. 1801. St. Louis County, by virtue of having an assessed valuation of three hundred million dollars, or over, as specified by Sec. 1 of the act just mentioned, concededly belongs in "Class 1" thus created.

The second proviso to Sec. 8660 was in the nature of a limitation upon the power conferred upon the county court under Sec. 8655. Its object was to except something out of the terms of that grant of power. A proviso can have no existence apart from the provision it is designed to limit or qualify. So, even assuming that the later enacted classification act was sufficient to validate pre-existing Sec. 8655 as a general law defining the power of counties (with respect to the office of county highway engineer), under Sec. 8, Art. VI of the Constitution, because applicable alike to every county in the state, the proviso would have to fall because it is neither applicable to all of the counties of the state, nor to any particular class or classes of counties, as defined by the classification act, and, hence, is in no sense a general law within the meaning of the constitutional provision we are considering. The circumstance that the two counties to which the proviso ever applied (St. Louis County and Jackson, each having a population of more than 50,000, taxable wealth exceeding forty-five million dollars, and adjoining or containing a city of more than 100,000 inhabitants) now comprise the whole of "Class 2" counties, as presently constituted, would not save it.

The relator further contends that even though the proviso be deemed inconsistent with Sec. 8, Art. VI, the latter section "has been suspended by the provisions of Sec. 3 of the Schedule, at least during the terms of those persons holding office at the time of the adoption of such Constitution." From this premise it is argued that the intent of Sec. 3 of the Schedule is "to preserve in tact for the fixed and definite period of time for which they had been appointed or elected, the *offices* of the persons holding them at the time of the adoption of the Constitution." It is said that the legislature so construed these provisions when it enacted Sec. 13190a, Mo. R. S. A., Laws 1945, p. 1759, which will be hereinafter noticed.

We are of the opinion, and so hold, that Sec. 3 of the Schedule would not operate to preserve the second proviso after Jablonsky's death for the remainder of the term for which he had been elected, and thus immunize the office from the effects of any repeal of the proviso during the whole of that period. Section 3 of the Schedule says, "The terms of all persons holding public office to which they have been elected or appointed at the time this Constitution shall take effect

shall not be vacated or otherwise affected thereby." This provision was intended to protect the then incumbents, and conferred upon them the right to hold for the remainder of their respective terms; but it has no reference to their successors because it does not purport to speak with reference to the office itself. It does not mean that the *office* may not be affected by the provisions of the Constitution, (or a subsequently enacted statute) during the term for which the incumbent was elected, in the event of the latter's death or resignation. To hold otherwise would mean that the successor to a supreme or an appellate judge (one in office at the time the Constitution became effective) would not be bound by the constitutional requirement for retirement upon attaining the age of 75, [Sec. 25, Art. V] until the lapse of the term for which his predecessor was elected or appointed. Or, take the case of the successor to a circuit judge in the same situation. It will be assumed that because of Sec. 3 of the Schedule, the provision for compulsory retirement for disability [Sec. 27, Art. V] would not affect the incumbent [289] judge, during his tenure, but who would contend that his successor, while serving the unexpired portion of that term, would not be subject to such provisions?

Apart from any question of nullification of the second proviso to Sec. 8660 by operation of Sec. 2 of the Schedule, it will be seen that the Legislature by House Committee Substitute for House Bill 792 (Laws 1945, p. 1493) intended to, and did, effect its repeal effective as of July 1, 1946. That act expressly repealed Secs. 8655, 8660 and five other sections of Art. 9, Chap. 46, R. S. '39, and enacted in lieu thereof three new sections "pertaining to the same subject matter in counties of Classes two, three and four, to be numbered Sections 8655, 8659 and 8660." Section 8659 prescribes the effective date of the new act as follows: "The provisions of this act shall be and become effective January 1, 1949: *Provided that any part of this act which shall be necessary to remove any inconsistency with the constitution of this state shall be and become effective July 1, 1946.*" (Emphasis ours.) It would seem clear that, under this italicized clause, the Legislature was striking at the second proviso (among other things), and that its repeal as of July 1, 1946, was intended. This act (H. C. S., H. B. 792) supplanted the former statutory county highway engineer scheme as to all counties in Classes 2, 3 and 4, effective January 1, 1949, except in respects just noted. The subject matter thereof in the remaining Class 1 counties, to which St. Louis County belongs, was dealt with by H. C. S. for H. B. 794 (Laws 1945, p. 1400). Section 1 thereof reads as follows: "In all counties of class one in this state there is hereby created the office of county highway engineer and surveyor, to be known and designated as highway engineer, who shall be the chief officer in such county in all matters pertaining to highways, roads, bridges, culverts and surveys. At the general election in the year 1948, and every four years there-

after, the qualified voters of each such county shall elect a highway engineer, who shall hold his office for four years and until his successor is elected, commissioned and qualified." It was provided by Sec. 14 that the "provisions of this act shall be applicable only to counties of class one, and any other acts or laws, or parts thereof, inconsistent herewith are hereby repealed." It contained an emergency clause, and was approved by the Governor June 10, 1946.

The second proviso being no longer operative, as we have seen, the question arises as to whether former Sec. 8655 (authorizing county courts to appoint) has been preserved until January 1, 1949, in counties of the first class, or whether, because of the emergency clause appended to H. C. S. for H. B. 794, the latter statute is now applicable, notwithstanding Sec. 13190a[5] relating to the office of surveyor in certain counties. [H. C. S. for H. B. 793; Laws, 1945, p. 1759.] If former Sec. 8655 is still in effect, as respondent contends, then his appointment must be held valid; but if the matter is controlled by H. B. 794, it is conceded that the opposite result must follow. The question is not entirely free of difficulty.

On this phase of the case, respondent, agreeing with the interpretation we have placed upon the language of Sec. 3 of the Schedule, says that the *first* portion of Sec. 13190a is in harmony with such interpretation, in that it merely preserves the " 'tenure' of the person holding office" [at the effective date of H. C. S. for H. B. 793]. But as to the remainder of that section, he contends that the Legislature properly drew a distinction between "a term of office" and "the term of persons holding office," and urges that the next clause of Sec. 13190a [beginning with "and all the provisions of law"] holds "the entire surveyor [290] law . . . in status quo for the *period* of the elected term of persons holding office, to-wit: until *January 1, 1949.*" Whether this is a correct interpretation of the portion of the clause he relies on does not need to be ruled because the contention overlooks or ignores other and highly significant language of the same sentence, to-wit, "unless otherwise provided by law."

Absent H. C. S. for H. B. 794, all of the provisions of the former laws relating to the office of county surveyor would still be in effect in counties of Class 1 by force of the provisions of Sec. 13190a, and so the question is reduced to this: Whether it has been "otherwise provided by law," as permitted by Sec. 13190a, by the enactment of H. C. S. for H. B. 794. We think this question must be answered in the

[5]"In all counties of this state the terms of all persons holding the office of county surveyor at the time of the effective date of this act shall not be vacated, or otherwise affected thereby, and all the provisions of law relating to the office of surveyor shall remain in full force and effect for the period of the term of such persons holding the office of county surveyor at the time of the effective date of this act, unless otherwise provided by law. Otherwise the provisions of this article shall hereafter apply only to counties of Classes 2, 3 and 4."

affirmative. The validity of the emergency clause has not been attacked by the pleadings, so we are concerned with only an interpretation of its effect. Respondent's brief says that the emergency clause "was inadvertently added to the Bill in the Senate by amendment (page 3689, Senate Journal dated May 14, 1946), was not necessary, and had the effect only of *advancing the date of the Act* from October 6, 1946 (90 days after the July 8th recess) to June 10, 1946. It did not alter the date upon which it is operative." The bill was reported out of the appropriate House Committee without an emergency clause, and it was so passed by the House. From these circumstances it is argued that "the frightening spector of July 1, 1946, prompted the adoption of emergency clauses in many instances when in the reorganization of the statutes, they were not required." But we are not at liberty to so regard the legislative history of this bill. The record is to the contrary, and shows the emergency clause came in by a Senate amendment. It may not, therefore, be inferred that the amendment was unintended. The bill presently creates the new office, and consolidates the functions of the two former offices. Witness this language, "In all counties of class one in this state *there is hereby created* the office of county highway engineer and surveyor, to be known and designated as highway engineer," etc. In State ex rel. Brown v. McMillan, 108 Mo. 153, 159, it was said: "We think that both authority and the spirit of our institutions favor the view that when an office is created, and no restrictions for filling the vacancy are imposed, a vacancy arises *ipso facto.*" During Jablonsky's incumbency there was no vacancy to fill in the new office, but for the reasons hereinabove discussed, the circumstance of his death removed the restrictions theretofore existing, and made it competent for the appropriate authority to fill the vacancy. A suggestion has been made by way of a statement in respondent's brief that on the 24th day of June, 1947, the Governor appointed one Pfeiler as county surveyor for the unexpired term of the elected, deceased surveyor, Jablonsky, and that Pfeiler, having been commissioned as surveyor, lodged with the county court a demand for the office of highway engineer. But Pfeiler is not a party to this proceeding, so we are not called upon in this proceeding to adjudicate his title to the office to which he was appointed. By the express terms of the act "any other acts or laws, or parts thereof, inconsistent herewith" were repealed, and by Sec. 2 the Governor was vested with the power of appointment in the matter of filling vacancies. However, by holding H. C. S. for H. B. 794 operative from and after June 10, 1946, the date of its approval, effect will be given to the consistent legislative policy of requiring the duties of county surveyor and county highway engineer in St. Louis County (and all others now constituting Class 1) to be performed by the same person, thus, in practical effect, consolidating the two offices. Such has been the law for nearly 40 years. [Laws 1909, p. 755.] It will

continue to be so under the new act. In this situation, the court, in the absence of compelling authority to the contrary, should avoid a construction which would . run counter this plain and consistent legislative intent, even for a brief interval in a period of transition resulting from the adoption of the new Constitution.

■ Judgment of ouster should be, and it is awarded. All concur.

## On Motion For Rehearing

■ [291] PER CURIAM:—We think it a sufficient answer to respondent's motion for a rehearing to point out with more particularity that there was a vacancy in the new office of county highway engineer and surveyor in St. Louis County, after the death of Jablonsky, which the Governor could fill by appointment for the following reasons: Although the terms of county surveyors and all provisions relating to the office of county surveyor were continued in force in all counties "unless otherwise provided by law", (H. C. S., H. B. 793, Sec. 13190a, Laws 1945, p. 1759) nevertheless, when Jablonsky died the old office of county surveyor (and ex officio county highway engineer in St. Louis County) terminated. This is true because it had been "otherwise provided by law" by H. C. S., H. B. 794 (Laws 1945, p. 1400) providing that "there is hereby created the office of county highway engineer and surveyor" to supersede it in class one counties. This new office was in existence before Jablonsky died because this law went into effect before he died. The old office continued as long as Jablonsky continued to hold it, because his tenure in it was protected, both by Sec. 3 of the Schedule in the 1945 Constitution and new Section 13190a. However, after his death the office he held (county surveyor and ex officio county highway engineer) no longer existed in St. Louis County, but there was a new office then in existence (the office of county highway engineer and surveyor) which no one occupied. Thereafter, there was a vacancy in this new office which the Governor could fill by appointment. It does not violate Section 8, Article VI of the 1945 Constitution to have this new office in operation in St. Louis County now, although the old one continues in Jackson County (the only other Class 1 county) during the term of office therein, which commenced prior to the adoption of the Constitution, because the Constitution itself provided for this situation, in Section 3 of the Schedule. The motion for rehearing is overruled.