STATE of Missouri ex rel. Clifford G. HALL, Circuit Clerk, Clay County, Missouri, et al., Relators,

v.

Edward J. BAUMAN, Presiding Judge, Clay County Court, et al., Respondents.

No. 25736.

Kansas City Court of Appeals, Missouri.

March 29, 1971.

Wm. Harrison Norton, Norton & Pollard, North Kansas City, for relators.

William S. Brandom, Pros. Atty., Clay County, Liberty, for respondents.

ORIGINAL PROCEEDING IN MANDAMUS

DIXON, Commissioner.

This is an original proceeding in mandamus. The initial petition was filed by Clifford G. Hall, the Circuit Clerk of Clay County, against the Presiding Judge, the County Clerk, Donald F. Warren, and the County Auditor, Marion Kincaid. By appropriate motion, the two Associate County Judges of Clay County, J. B. Moore and Thomas M. Howell, have been granted leave to intervene as parties respondent; and in the same manner, William E. Eldridge, the Recorder of Clay County, has joined as a relator. Relators allege that they were both elected to office in 1970 and have qualified and acted in their respective offices since January 4, 1971 but have not received any compensation. They request that we issue our writ of mandamus to compel the respondents to pay the salary provided by Section 50.334 V.A.M.S. Respondents, by return, deny that Section 50.334 provides any authority for the payment of the salaries of relators. The parties have waived the issuance of the alternative writ and submitted the case to us upon the pleadings above noted and a stipulation of facts. The parties agreed that the relators are duly elected, qualified and acting in their respective offices. It is agreed that the population of Clay County was 123,000 people on January 1, 1971, and that the assessed valuation of the county was $312 million. The parties concede there is no adequate remedy at law. We have jurisdiction under Article V, Section 4 of the Constitution of Missouri, 1945, V.A.M.S., and it is plain that mandamus is the proper action to compel the payment of fees to a county employee. Perkins v. Burks, 336 Mo. 248, 78 S.W.2d 845.

Thus, the single issue presented is the meaning of Section 50.334 as it applies to

relators. This statute was enacted to provide compensation for recorders and clerks in all counties of Missouri except those of the first class. It repealed all other statutes relating to compensation for such officers. The statute in full is as follows:

## SALARIES AND FEES

50.334. Recorders and clerks, compensation (counties of less than five hundred thousand population and less than three hundred million dollars assessed valuation)

1. In all counties having a population of less than five hundred thousand and an assessed valuation of less than three hundred million dollars, the recorder of deeds, the circuit clerk, the circuit clerk-ex officio recorder of deeds, or the clerk of court of common pleas, as the case may be, shall receive as total compensation for all services performed by him an annual salary which shall be computed on a combination population assessed valuation basis as set forth in the following schedule:

| POPULATION | SALARY | ASSESSED VALUATION | | | | SALARY |
|---|---|---|---|---|---|---|
| 2000 to 3000 | $3100 | Less than $5 Million | | | | $1800 |
| 3001 to 4000 | 3150 | $5 million to | $6 million | | | 1800 |
| 4001 to 5000 | 3200 | 6 " to | 7 | " | | 1800 |
| 5001 to 6000 | 3250 | 7 " to | 8 | " | | 1800 |
| 6001 to 7000 | 3300 | 8 " to | 9 | " | | 1800 |
| 7001 to 8000 | 3350 | 9 " to | 10 | " | | 1800 |
| 8001 to 9000 | 3400 | 10 " to | 11 | " | | 3100 |
| 9001 to 10,000 | 3450 | 11 " to | 12 | " | | 3150 |
| 10,001 to 12,500 | 3500 | 12 " to | 13 | " | | 3200 |
| 12,501 to 15,000 | 3550 | 13 " to | 14 | " | | 3250 |
| 15,001 to 17,500 | 3600 | 14 " to | 15 | " | | 3300 |
| 17,501 to 20,000 | 3650 | 15 " to | 16 | " | | 3350 |
| 20,001 to 25,000 | 3700 | 16 " to | 17 | " | | 3400 |
| 25,001 to 30,000 | 3750 | 17 " to | 18 | " | | 3450 |
| 30,001 to 35,000 | 3800 | 18 " to | 19 | " | | 3500 |
| 35,001 to 40,000 | 3900 | 19 " to | 20 | " | | 3550 |
| 40,001 to 45,000 | 4000 | 20 " to | 22½ | " | | 3650 |
| 45,001 to 50,000 | 4100 | 22½ " to | 25 | " | | 3750 |
| 50,001 to 60,000 | 4200 | 25 " to | 27½ | " | | 3850 |
| 60,001 to 70,000 | 4300 | 27½ " to | 30 | " | | 3950 |
| 70,001 to 80,000 | 4450 | 30 " to | 32½ | " | | 4050 |
| 80,001 to 90,000 | 4600 | 32½ " to | 35 | " | | 4150 |
| 90,001 to 100,000 | 4700 | ·35 " to | 37½ | " | | 4250 |
| 100,001 to 125,000 | 4850 | 37½ " to | 40 | " | | 4350 |
| 125,001 to 150,000 | 5000 | 40 " to | 42½ | " | | 4450 |
| 150,001 to 175,000 | 5150 | 42½ " to | 45 | " | | 4550 |
| 175,001 to 200,000 | 5300 | 45 " to | 47½ | " | | 4650 |
| 200,001 to 225,000 | 5450 | 47½ " to | 50 | " | | 4750 |
| 225,001 to 250,000 | 5600 | 50 " to | 55 | " | | 4875 |
| 250,001 to 275,000 | 5800 | 55 " to | 60 | " | | 5000 |
| 275,001 to 300,000 | 6000 | 60 " to | 65 | " | | 5125 |
| 300,001 to 325,000 | 6200 | 65 " to | 70 | " | | 5250 |
| 325,001 to 350,000 | 6400 | 70 " to | 75 | " | | 5375 |
| 350,001 to 400,000 | 6650 | 75 " to | 80 | " | | 5500 |
| 400,001 to 450,000 | 6900 | 80 " to | 85 | " | | 5625 |
| 450,001 to 500,000 | 7150 | 85 " to | 90 | " | | 5750 |
| | | 90 " to | 95 | " | | 5875 |
| | | 95 " to | 100 | " | | 6000 |
| | | 100 " to | 125 | " | | 6150 |
| | | 125 " to | 150 | " | | 6300 |
| | | 150 " to | 175 | " | | 6450 |
| | | 175 " to | 200 | " | | 6600 |
| | | 200 " to | 225 | " | | 6750 |
| | | 225 " to | 250 | " | | 6900 |
| | | 250 " to | 275 | " . | | 7050 |
| | | 275 " to | 300 | " | | 7200 |

2. The population factor shall be as disclosed by the last preceding federal decennial census and the assessed valuation factor shall be the amount thereof as shown for the year next preceding the annual salary computation. Payment of the salary provided for herein shall be payable in equal monthly installments by the county.

Respondents contend that, since Section 50.334 provides for a range of classification both as to population and as to assessed valuation, relators' salary cannot be paid because no bracket in Section 50.334 provides for a county of the second class having an assessed valuation in excess of $300 million. They rely upon the last bracket of assessed valuation in the statute and contend that since a salary for circuit clerks and recorders in counties of 123,000 population and valuation in excess of $300 million is not expressly provided for in the statute, there is no authority for the payment of relators' salaries. Respondents reach this conclusion upon the basis of authority to the effect that statutes providing compensation for an officer must be strictly construed against the officer and that rendition of services by a public officer is deemed to be gratuitous unless a compensation therefor is provided by statute. These statements are taken from State ex rel. Smith v. Atterbury, 364 Mo. 963, 270 S.W.2d 399, 1. c. 403. They are set forth in that opinion as a recital of the position taken by the respondents in that case, but the court does not adopt or follow this rationale in the decision. The authority cited in Smith, supra, for these propositions is Nodaway County v. Kidder, 344 Mo. 795, 129 S.W.2d 857. In the Nodaway County case, the question was the right of a county judge to receive payment for additional services, not upon the basis of any statute, but upon a purported agreement to pay additional amounts for work relating to his official duties. Smith, Judge, v. Pettis County, 345 Mo. 839, 136 S.W.2d 282, and an earlier case, Ward v. Christian County, 341 Mo. 1115, 111 S.W.2d 182, are again cases involving the question of additional compensation of officers. We do not believe the rule of strictly construing such statutes applies where the issue is not additional compensation but complete denial of any compensation. We are strengthened in this conviction by reason of our Constitution, Article VI, Section 11, which provides that all county of-ficers *shall* be compensated as prescribed by law, and Article VI, Section 12, which requires compensation be by salary in all counties where the population exceeds 100,000. To construe the statute under consideration as denying relators any compensation would require us to hold that the legislature has flown in the face of the Constitution and has refused to prescribe by law compensation for relators.

Respondents also contend that, since no compensation is provided by law for relators, the entire statute is unconstitutional because it does not apply to all counties in the class to which Clay County belongs. We will not accept a construction which requires a finding that the statute is unconstitutional unless such is compelled. On the facts of this case, we do not believe this to be necessary.

What this argument proves is that it is necessary to construe this statute by reason of the latent ambiguity arising when it is applied to Clay County. In making such a construction of the statute, we are aware of the general rule that we may not enlarge or extend a statute by construction unless it is necessary to obviate repugnancy and inconsistency and to give effect to the manifest intention of the legislature by the application of sound principles of interpretation. Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1. We are not confined to the mere letter of the law, nor to the literal or strict meaning of statutory terminology. "It is a cardinal rule, universally accepted, that, in the exposition of a statute, the intention of the lawmaker will prevail over the literal sense of the terms; its reason and intention will prevail over the strict letter." State v. Schwartzmann Service, Inc., 225 Mo.App. 577, 40 S.W.2d 479, 1. c. 480.

Relators urge that we have the right and the duty to construe the statute within itself by reading the word "and" in the second line of the title and in the second line

of Section 1 as "or". The statute interpreted as they suggest would then read:

SALARIES AND FEES

50.334. Recorders and clerks, compensation (counties of less than five hundred thousand population [and] or less than three hundred million dollars assessed valuation)

1. In all counties having a population of less than five hundred thousand [and] or an assessed valuation of less than three hundred million dollars, * * *.

They contend that construing the statute in this fashion would require its application to Clay County because the population figure of 123 thousand would make one of the alternatives requiring application of the statute applicable to Clay County. They support this argument by pointing out that Section 50.334 repealed all of the statutes providing for compensation of circuit clerks and recorders of second, third and fourth class counties, including, therefore, Clay County. They infer from this a legislative intent to provide salaries for all officers in second, third and fourth class counties by this statute. Therefore, they argue, in effectuating this intent, we should make the change in wording that they suggest. We agree that the intent of the statute was to provide salaries for all such officers in all of the counties in Missouri except those of the first class, but we do not agree that it is necessary to do such violence to the statutory language to reach the result contended for by relators.

The bedrock issue in this case involves the operation of government in Clay County. " * * * (W)e are at liberty to take judicial notice of matters of common knowledge, of matters of current history as related to affairs of public interest and concern, * * *." State ex rel. Crutcher v. Koeln, 332 Mo. 1229, 61 S.W.2d 750, 1. c. 756. We know that Clay County, on the threshhold of becoming a first class county, has a vital and continuing interest in

the operation of its circuit courts and its recorder's office. These relators are indispensable officers in the continuance of those functions. A construction which would provide no salary for these important offices is absurd. Common sense and common need, in terms of Clay County, require that this situation not be permitted to exist unless absolutely necessary. Believing as we do that the issues presented by this case relate to the primary concern and structure of county government, we consider the statute in question in the light of the basic governmental structure of Clay County as established by the legislature.

Although the statutes we are about to consider are not strictly in pari materia with the statute in question, the principle of pari materia, or construing together statutes relating to the same subject matter, can certainly be extended to the present situation when the basic issue confronting the court involves the continuance of an important function of county government. It has been held that "(i)n determining legislative intent, statutes on cognate subjects may be referred to, though not strictly, in pari materia." State ex rel. and to Use of Ray, County Revenue Collector, v. Paragould & S. E. Ry. Co., 208 Mo.App. 600, 235 S.W. 499, 1.c. 500. Section 48.020 V.A.M.S. is such a cognate statute. This broad statute applying to all counties in Missouri was declared by the legislature to be "the foundation upon which the whole structure of county government and laws relating thereto rests." Laws of 1945, p. 1801, State on Inf. Taylor v. Kiburz, 357 Mo. 309, 208 S.W.2d 285, 1. c. 288. Relating as it does to the entire subject of county government, it therefore provides a background against which all other statutes relating to county government and the compensation of officers must be read. It is, in effect, the limiting statute upon all other legislative action dealing with county government. It was said in Kiburz, supra, 1.c. 287–288, these statutes were required by Article VI, Section 8, 1945 Constitution before any "valid legisla-

tion governing their organization and powers, (of counties) subsequent to July 1, 1946" were or could be enacted.

■ It takes but a casual examination of the statutes relating to county government to realize the importance of Section 48.020 as a generic statute. Except for a few statutes which apply to all counties in Missouri, the great majority of statutes dealing with county government are made applicable by reference to the class of county. A few examples of this are set forth below.[1] Nor does Section 48.020 V. A.M.S. stand alone; another section provides specifically for the effective date of a change in status, 48.030 V.A.M.S. That statute provides that a change in classification shall not be accomplished until the valuation set forth in Section 48.020, supra, is maintained for five successive years. The obvious intent of Section 48.030 is to provide stability and to delay a change of class of a county until the valuation increase has continued long enough to show the growth of the county was permanent.

■ The evident plan of the legislature for county government in Missouri has thus provided for the classification of counties by Section 48.020. Section 48.030 then requires that the valuation minimum for that class continue for five years before reclassification. Thus, these two statutes, read together, provide for orderly change in classification of counties. Section 48.030 qualifies or suspends the operation of Section 48.020 for the five-year period. Thus, in the case of Clay County, which has exceeded the $300 million valuation figure provided by Section 48.020 as the division between second and first class counties, it has now provisionally qualified as a first class county. Section 48.030,

however, prevents the operative effect of 48.020 for the five-year period. It necessarily follows that Clay County remains a second class county subject to all the statutes properly applying to such counties. Thus, a statute which uses the language "a county of the second class" (as many do), plainly applies to Clay County even though the valuation of the county is $312 million. The statute we are now considering also applies to second class, third class and fourth class counties. This because both in the title and in the first line of the statute, the legislature has *described by valuation* those classes of counties. Considering then, as we must, the intent of the legislature and the general scheme demonstrated for the government of counties in Missouri, it follows that the legislature intended for Section 50.334 to apply to all counties of the second, third and fourth classes, and by the operation of Section 48.030, as demonstrated above, to apply to any county which has exceeded the valuation for its class, but has not yet changed classification by reason of the passage of time. Logic then compels the conclusion that the legislature intended that counties which reached the maximum valuation set forth in 50.334 or exceeded it would continue to be governed by its provisions until such time as the county was no longer subject to the statute by reason of its change in classification. Thus, we find the legislative intent and meaning of Section 50.334 to be to provide a salary for circuit clerks and recorders in counties of the second class. When such counties exceed $300 million in valuation, the statute continues to apply by reason of Section 48.030. Likewise, having exceeded $275 million in valuation, the salary provided for counties so valued shall continue to apply until such county has become a first class county. The suspension

---

1. Examples of application of statutes to counties on the basis of classification are: with respect to assistant prosecuting attorneys, Section 56.180 applies in first class counties; Sections 56.200, 56.210 and 56.220 apply in second class counties; Section 56.240 applies in class 3 and class 4 counties. As to deputy sheriffs, Section 57.220 provides for appointment in class 2 counties; Section 57.250 deals with appointment in class 3 and class 4 counties. These citations should be sufficient to show the pervasive effect of Sections 48.020 and 48.030 on the legislative scheme for county government.

of the upper limit of valuation in these circumstances is logically the same as the effect Section 48.030 has in delaying the application of statutes referring to "first class counties" to Clay County. To rule otherwise and hold that 48.030 does not suspend the operation of the last valuation figure in Section 50.334 would require a like holding with respect to the operation of statutes which simply refer to "first class" counties, and chaos in county government could result. There is sound authority for the suspension [1] of the effect of statutes by the operation of another statute specifically designed for that purpose, and we believe that our view of the problem of the construction of this statute comports not only with that authority but common sense.

We, therefore, hold that the salaries of the circuit clerk and recorder of Clay County shall be computed in accordance with the highest valuation brackets provided in Section 50.334, even though the valuation of the county exceeds the highest figure shown in such brackets. Thus, the valuation presently would require a payment of $7,200 and the present population would require an additional amount of $4,850. It is apparent that relators are now and have been since January 4 entitled to an annual salary amounting to $12,050.

Accordingly, we order our peremptory writ to issue commanding respondents to take all necessary steps forthwith for the payment of the amounts now due and owing relators.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of DIXON, C., is adopted as the opinion of the Court.

All concur.

1. State ex rel. Crutcher v. Koeln, 332 Mo. 1229, 61 S.W.2d 750.