**STATE of Missouri ex rel. James S. McCLELLAN, et al., Relators,**

v.

**The Honorable Michael GODFREY, Judge of the Circuit Court of the City of St. Louis, Missouri, Division Number Three, Respondent.**

**No. 58894.**

Supreme Court of Missouri, En Banc.

Feb. 21, 1975.

Rehearing Denied March 10, 1975.

Walsh, Howe & Ebert, Eugene P. Walsh, Clayton, for relators.

Sestric, Sestric, Sweet & McGhee, Anthony J. Sestric, St. Louis, for respondent.

MORGAN, Judge.

In this original proceeding in prohibition, the relators, who are all members of and constitute the Board of Election Commissioners for the city of St. Louis, seek to prohibit the respondent from proceeding further in a suit for declaratory judgment and injunctive relief filed by one Helen L. Taylor, Coroner of the city of St. Louis, as plaintiff against the relators herein as defendants.

The underlying action was initiated by Mrs. Taylor to enjoin the Board of Election Commissioners from submitting to the voters of that city on March 4, 1975 (or any date thereafter), a proposal for the establishment of a City Medical Examiner as ordered by the Mayor of the city of St. Louis. Similar efforts to submit the question to the electorate during the latter part of 1974 were restrained by the respondent-judge, but consideration need be given only to the last order directed to the Board. It was attacked, basically, on two grounds, to-wit: (1) that the provisions of the statutory scheme creating the office of City Medical Examiner—§§ 58.700–58.765

(Laws 1973)—were inapplicable to the city of St. Louis and the mayor thereof, and (2) that the provisions of §§ 58.700–58.765 are "invalid, void, illegal and unconstitutional."[1] On November 15, 1974, respondent sent to counsel for both sides below a copy of an Order, Judgment and Decree with a Memorandum Opinion granting plaintiff's prayer for relief with the expressed intent to enter the same unless prohibited from doing so.

Thereafter, the instant proceeding was filed and our provisional rule issued on December 16, 1974, and oral arguments were heard by this court en banc on January 16, 1975.

We do note initially that relators have no other adequate and timely remedy by appeal or otherwise as they have been ordered to place the City Medical Examiner proposition on the ballot for the coming election; and, they must immediately begin preparations for such submission, publication of notice of such election and preparation of absentee ballots. As to the election date now designated, the question would become moot before the same ordinarily could be decided on appeal. Furthermore, entry of the decree as now proposed by respondent, wherein §§ 58.700–58.765 were declared unconstitutional, would have a state-wide effect on the implementation of that statutory scheme and the exception contemplated in Civil Rule 84.22, V.A.M.R., is applicable. In Stemmler v. Einstein, 297 S.W.2d 467 (Mo.banc 1957), this court said, at 469: " . . . [d]ue to the urgency of an early determination of the issue, we waived the provisions of our Rule 1.23 [now Rule 84.22] . . . [a]nd we have concluded that the facts . . . justify the exercise of our jurisdiction to determine the case on the merits." So it is with this case.

The basic thrust of the statutory provisions noted is to abolish mandatorily the office of county coroner in certain classes of counties and to create the office of county medical examiner. In all other counties, the local electorate is given the right to choose whether to replace the office of county coroner with that of county medical examiner. The medical examiner must be "a physician duly licensed to practice by the state board of healing arts," which was not a requirement for a county coroner. It is provided that the medical examiner will not be elected but will be appointed by and "serve at the pleasure of the governing body of the county." Those presently occupying the office of county coroner are permitted to finish their terms in office.

The specific sections which caused the controversy and must be construed are, in part, as follows:

58.700: The governing body of all counties of the second class . . . [with a certain population] . . . and all counties of the first class not having a charter form of government shall appoint a county medical examiner and set his compensation.

58.760. 1. The provisions of sections . . . 58.700 to 58.765 may be adopted by *any other county of this state* after approval by a vote of the people of the county. The governing body of the county may make an order presenting the proposition for the establishment of a county medical examiner at a special election or at any primary or general election . . . . (Emphasis added.) 58.760. 4. As used in sections 58.700 through 58.765 in reference to any county of the first class composed entirely of a city with a population of more than six hundred thousand, the term "governing body of the county" means the mayor of such city and the terms "city medical examiner" . . . shall be used in lieu of "county medical examiner". . . .

We consider first the contention that the enactments noted are not applicable to the

1. All statutory references are to RSMo 1969, V.A.M.S., and constitutional references are to the 1945 Missouri Constitution, V.A.M.S.

city of St. Louis. In ruling that they were not, the trial court reasoned that: "Any powers or laws applicable to a county of a particular class is not, and cannot be, applicable to the City of St. Louis since it is only laws applicable to all counties in general, under Section 1.080, which are applicable to the City of St. Louis. Since Section 58.760(4) deals only with counties of the first class, it cannot be applicable to the City of St. Louis, and . . . the Mayor is without authority to take the herein-described action."

To consider the validity of the ruling made, consideration must be given to certain existing constitutional and statutory provisions; which, in any event, do give the city of St. Louis a unique status in the governmental structure of this state.

Article 6, § 31, of the 1945 Missouri Constitution, V.A.M.S. declares that: "The city of St. Louis, as now existing, is recognized both as a city and as a county . . . ."

Article 6, § 1, thereof recognized the then "existing counties" as "legal subdivisions of the state," and in § 8 thereof authorized the legislature to classify counties in not to exceed four classes "except as provided in this constitution." Such counties are listed in § 46.040 under the title: "State divided into one hundred and fourteen counties and one city." Thereafter the same are numerically listed with number 115 being the city of St. Louis.

Section 48.020 classifies the "counties" into four classes with "Class 1." identified as: "All counties now having or which may hereafter have an assessed valuation of three hundred million dollars and over shall be in the first class."

Section 1.080 provides, in part, that: "Whenever the word 'county' is used in any law, general in its character to the whole state, the same shall be construed to include the city of St. Louis, unless such construction be inconsistent with the evident intent of such law . . . ."

A great portion of the arguments of the parties is directed toward the question whether or not the city of St. Louis is a first class county. Relators contend that it is and respondent contends it is not, and they submit that the applicability of the Act turns on acceptance or rejection of either argument. The question is not a novel one in this court. Representative cases include: The City of St. Louis v. Clabby, 88 Mo. 573 (1886); State v. Mason, 153 Mo. 23, 54 S.W. 524 (1899); State v. Sheehan, 269 Mo. 421, 190 S.W. 864 (1916); State ex Inf. Gentry v. Armstrong, 286 S.W. 705 (Mo.banc 1926); State v. Dwyer, 124 S.W.2d 1173 (Mo. banc 1939); State v. Kiburz, 208 S.W.2d 285 (Mo.banc 1947); Stemmler v. Einstein, 297 S.W.2d 467 (Mo.banc 1956); Preisler v. Hayden, 309 S.W.2d 645 (Mo.1958) and Land Clearance For Redevelopment Auth. v. Zitko, 386 S.W.2d 69 (Mo.banc 1964).

Although different classes of counties as we now have them in § 48.020 followed adoption of the Missouri Constitution of 1945, the cases just noted, handed down both before and after that date, all recognize the unique and singular status of the city of St. Louis in connection with county functions. For instance, in State v. Armstrong, supra, the court said, 286 S.W. at 707 (in 1926): "The city of St. Louis is in a class by itself, and this pursuant to constitutional authority"; and thereafter (in 1948), this court in State v. Kiburz, supra, 208 S.W.2d at 288 declared that St. Louis County and Jackson County comprised the only "Class 1" counties in this state at that time. The city of St. Louis was conspicuous by its absence.

Although the legislative task of wording statutory enactments and judicial construction of the same would be simplified by classifying the city of St. Louis in connection with county functions in Class 1 of § 48.020, neither department is free to do so by reason of the constitutional provisions noted. The question as to whether §§ 58.700–58.765 apply to the city of St. Louis yet remains.

Section 58.700 dictates adoption of the medical examiner, approach in two classifications of counties, and § 58.760, subd. 1 authorizes adoption of the same in "any other county of the state." Apparently to avoid the effect of § 1.080, insofar as it provides that the word "county" will include the city of St. Louis if the enactment is "general in its character to the whole state," the respondent seems to argue that unless the word "counties" is used by itself, without qualification or specification in a statute, the same does not include the city of St. Louis. The argument is not persuasive. A reading of §§ 58.700 through 58.765 shows clearly that this statutory package covers every county in the state. It would be difficult to use more general terms than "any other county" found in the statute. In State v. Dwyer, supra, a statute regulating the election of county treasurers was construed which included the provision: ". . . in all counties of the State, now or hereafter having a population of 40,000 or more inhabitants . . . (except in counties having 75,000 and not more than 90,000 inhabitants) and in all counties of less than 40,000 inhabitants if under township organization." The court quoted and considered the language found in § 1.080, and held: "We think that . . . the word 'County' . . . includes the City of St. Louis." 124 S.W.2d at 1175. In other words, the fact that the statute's coverage was limited to counties of certain size with certain forms of government did not prevent the law from being one "general in its character to the whole state." The same reasoning is applicable to the instant case.

▮▮▮ Secondly, we consider specifically § 58.760, subd. 4, which it appears from that portion of its Memorandum Opinion heretofore quoted, the trial court concluded was controlling in deciding if § 1.080 was applicable. We believe such an approach was erroneous. The coverage of § 58.760 is set out in subdivision 1, i. e., "any other county," and under § 1.080 the city of St. Louis was included. Subdivision 4 of 58.-760 has nothing to do with "coverage" of the statutory scheme, but only defines the "governing body" for purposes of the Act in those counties, if any, identified in subdivision 4. As written, it applies to "any county *of the first class* composed entirely of a city with a population of more than six hundred thousand . . . ." (Emphasis added.) Absent the words "of the first class," it is obvious that the legislative intent was to specify the city of St. Louis. We can take judicial notice, as we do, that there is only one geographic area in the state performing county functions having the characteristics listed. That, of course, is the city of St. Louis; and, there is nothing apparent to suggest that a comparable governmental area will be created in the foreseeable future. Furthermore, common sense dictates that the legislative objective of upgrading the investigative aspects surrounding unusual deaths would not have been denied the most populated area in the state. The Act itself indicates as much. With the legislative intent so clear, are we to ignore or defeat the same because of the erroneous designation of the city of St. Louis as a first class county? We are not legally compelled to do so nor do we believe it desirable to do so. As said in State v. Sheehan, supra (ironically involving the applicability of other legislation to the city of St. Louis), 190 S.W. at 865: "Respondent contends that the act quoted is void because meaningless and uncertain as to the things to which applicable and because local and special, if so construed as to make the word 'counties' found in the latter provision of the act, include the city of St. Louis. The act is not skillfully drawn, and might, in the absence of recognized rules of construction, be so interpreted as to subject it to the charges made; but, in dealing with subjects of this character, we are constantly reminded, by both our own holdings and certain principles uniformly accepted as sound, that it is our duty to resolve all doubts in favor of the validity of a legislative act, we always being reluctant to declare statutes unconstitutional. We indulge the presumption that the Legislature did not intend to violate the organic law of the state, and we place

the burden upon him who asserts the contrary to so convince us. Acts of the Legislature and provisions of the Constitution must be read together, and so harmonized as to give effect to both when this can be reasonably and consistently done. Straughan v. Myers, 268 Mo. 580, 187 S. W. 1159. We have frequently said that doubtful words of a statute will be enlarged, restricted, supplied, or even stricken out in order to make them conform to the true intent to the lawmakers, when such intent is manifested by the aid of sound principles of interpretation." That such an approach toward statutory construction is still valid is evidenced by the recent decision of this court in Learned v. Godfrey, 461 S.W.2d 5 (Mo.banc 1970).

Therefore, we consider the words "of the first class" found in § 58.760, subd. 4 to have been entered improvidently and surplusage insofar as the true purpose of subdivision 4 is concerned. Any other construction would mean that the subdivision was a nullity and was not applicable to any area of this state. Thus, there is no statutory or constitutional reason why the city of St. Louis can not have an election to make the decision authorized by the Act.

■ A separate issue is whether § 58.-760(4) is unconstitutional as imposing an unlawful responsibility on the mayor of the city of St. Louis. Art. 6, § 22, of this state's constitution declares that:

> No law shall be enacted creating or fixing the powers, duties or compensation of any municipal office or employment, for any city framing or adopting its own charter under this or any previous constitution . . .

The constitutional vice urged by respondent is that the statute in question here imposes on, or allows, the mayor the right not only to call the election but to appoint a medical examiner and to fix the latter's compensation. This is allegedly an unconstitutional interference with the exercise of the duties of a municipal office in a charter city.

■ The key to the applicability of Art. 6, § 22, is the distinction between municipal offices and county offices. The constitutional provision covers only "municipal office . . . for any city." The same question was resolved in Stemmler v. Einstein, supra, and Preisler v. Hayden, supra. Therein, it was decided that the status of a county office or officer was not subject to the restrictions found in § 22 of Art. 6. Relators are correct in urging that: "[t]here can be no question that the office of Medical Examiner . . . is a county office; it replaces the county office of coroner." The activity of the mayor, called for by the Act, creates no constitutional violation because such activity does not involve the city of St. Louis in its capacity as a city but as a county. In that capacity the mayor is subject to the general laws of the state. State ex rel. Burke v. Cervantes, 423 S.W.2d 791 (Mo.1968), relied on heavily by respondent, is clearly distinguishable in that it dealt with city policemen and firemen in connection with city affairs. The point is ruled against respondent.

Lastly, we consider respondent's arguments that the entire statutory plan is unconstitutional because it was enacted in a bill (Senate Bill 122) wherein more than one subject matter was contained and the same was not expressed clearly in the title to the bill in contravention of § 23 of Art. 3. The latter section, in part, provides: "No bill shall contain more than one subject which shall be clearly expressed in its title . . ."

■■ The issue thus created is not one which lends itself to the formulation of any general rule or principle of universal application. For this reason each case must be considered on its own facts, and this court "has long been committed to the principle that [§ 23 of Art. 3] of our Constitution must be liberally construed." Graves v. Purcell, 337 Mo. 574, 85 S.W.2d 543, 549 (1935). In the instant case, the title called for the repeal of certain designated statutory sections and then read: " . . . relating to investigations and in-

quests in certain cases of death and to enact in lieu thereof twenty five new sections relating to the same subject . . ." It is amendatory of Chapter 58 (entitled "Coroners And Inquests") and deals with cases of violent, unexplained or criminally caused deaths and the investigation thereof. The comprehensive purpose of the bill was to upgrade not only the manner of investigation but also the qualifications of those persons participating in the same. We think it reasonably can be said that all sections challenged are germane to the objectives identified in the title and the point is ruled against respondent. Edwards v. Business Men's Assur. Co., 350 Mo. 666, 168 S.W.2d 82, 93 [18–19] (1942).

We find that the city of St. Louis and the officers thereof come within the purview of §§ 58.700 to 58.765, as now enacted, and that relators may proceed under the order of the mayor of said city heretofore referred to.

The provisional writ of prohibition is made absolute.

All concur.