STATE of Missouri,
Plaintiff-Respondent,

v.

Robert Earl DONEY,
Defendant-Appellant.

No. 42701.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 9, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Application to Transfer Denied
Nov. 10, 1981.

Kent E. Karohl, Kirkwood, for defendant-appellant.

John Ashcroft, Atty. Gen., Jay D. Haden, Asst. Atty. Gen., Jefferson City, George R. Westfall, Pros. Atty., Clayton, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Defendant appeals a jury conviction of rape and· deviate sexual intercourse, viola-

tions of § 566.030 [1] and § 566.060 respectively. He was sentenced to two consecutive 15 year terms. We affirm.

Defendant concedes that a submissible case was made, therefore only those facts necessary to establish the crime will be set forth. Early in the afternoon on March 18, 1979, the victim, a young woman employed as an Avon sales representative, made a call at a residence on Green Forest Drive in Fenton, Missouri. Defendant, a young man, answered the door. When asked, defendant told the victim his mother, the lady of the house, was asleep. The victim left an Avon brochure and told defendant his mother should telephone if she desired anything depicted in the brochure. The victim returned home. Approximately 40 minutes later, at 2:40 p. m., the victim received a telephone call from defendant. Defendant said that his mother would like to make a purchase. Shortly thereafter the victim returned to the residence on Green Forest. Defendant again answered the door. He told the victim she should proceed to the second floor because his mother had just awakened and was preparing to leave for work. Before reaching the top of the stairs the defendant grabbed the victim and placed handcuffs on her wrists. Defendant then pushed the victim down a hallway and into a bedroom. He removed her clothes and committed several acts of sexual intercourse and oral sodomy.

During the course of the assault, the door bell rang. Defendant left the bedroom to respond to the door bell. The victim immediately called her husband on a telephone in the bedroom. Meanwhile, at the front door defendant met Stacy Moore, a 14 year old female acquaintance. Defendant said nothing to Moore and returned upstairs. Moore came inside and after a minute followed. She had not seen which room defendant entered. Eventually she entered a bathroom and opened a door leading into a bedroom. There Moore saw defendant on the floor and heard a woman crying and "asking for someone to help her." The victim then informed defendant her hus-band was coming to her rescue. Defendant allowed her to dress and return downstairs. A few minutes later the victim's husband drove an automobile up the driveway and she ran to the car. Shortly thereafter the victim contacted the police and returned, with police officers, to the scene. Upon their arrival at the Green Forest Drive residence the police found Moore. Defendant had fled.

■ Defendant was charged with three crimes: Count I, rape; Counts II and III, two instances of deviate sexual intercourse. He was convicted of Counts I and II and acquitted of Count III. Defendant argues that the trial court erred in giving the state's two identical verdict directors for Counts II and III, two instances of deviate sexual intercourse, because it is impossible to distinguish the act for which he was convicted from the one for which he was acquitted. The state's verdict directors on deviate sexual intercourse were patterned after MAI–CR 2d 20.08.1. The court was obligated to give these instructions pursuant to Rule 28.02(c). We shall not declare submission of the approved instructions erroneous. *State v. Grady*, 577 S.W.2d 930, 931 (Mo.App.1979).

■ Defendant also argues that since the only evidence of the crimes charged under Counts I, II and III was based upon the uniform testimony of a single witness, the verdict of not guilty on Count III is inconsistent with the verdict of guilty on Counts I and II. While we acknowledge that all the evidence had a single source, we do not believe that reversal is required. *State v. Jones*, 545 S.W.2d 659, 666–667 (Mo.App. 1976). "However much the jury's conclusion may tax the legally trained's penchant for consistency, the law is clear that inconsistent verdicts among the varied charges of a multi-count indictment are not self-vitiating. * * * [J]uries frequently convict on some counts and acquit on others, not because they are unconvinced of guilt but simply because of compassion or compromise." *State v. McCall*, 602 S.W.2d 702, 708 (Mo.App.1980).

---

**1.** All statutory references are to RSMo 1978, unless otherwise indicated.

Defendant also attacks the giving of an instruction patterned after MAI–CR 2d 33.00. This instruction defines deviate sexual intercourse to mean "any sexual act involving the genitals of one person and the mouth, tongue, hands, or anus of another person." He complains that there was no evidence from which the jury could find an act of deviate sexual intercourse affecting the hand or anus. Thus, defendant argues, this instruction prejudiced the defendant. Once again the court committed no error as it merely submitted a mandatory instruction. A separate instruction defining deviate sexual intercourse *must* be given if that term is used in any of the instructions, regardless of whether the definition is requested or not. MAI–CR 20.08.1, Notes on Use No. 3. Thus, the trial court committed no error in giving MAI–CR 2d 33.00.

Defendant also alleges the trial court erred by failing to grant a mistrial. Defendant complains the state violated the rules of discovery by withholding a recording which he had requested. This recording contained statements made by one of defendant's witnesses, Ronald Lindner. Defendant complains he was prejudiced because the court subsequently admitted into evidence the substance of these statements. We are unable to agree. Defendant has failed to supply us with a transcript containing Lindner's testimony. Assuming, without deciding, that the state's failure to produce the recorded statement was a violation of Rules of Criminal Procedure, we cannot determine the prejudicial effect of this error without knowing the substance of Lindner's testimony. As it was his responsibility to provide a complete transcript for review this point must be ruled against defendant. *State v. Harris*, 564 S.W.2d 561, 565 (Mo.App.1978); *State v. Clark*, 522 S.W.2d 332, 334 (Mo.App.1975); Rule 30.-04(a).

Defendant also urges that it was error to allow Robert Gates to testify as to the substance of Lindner's tape recorded statements. Gates, an employee of the prosecutor's office, interviewed Lindner using a tape recording machine to preserve their conversation. This is a claim which defendant alleges for the first time on appeal. Defendant made no objection to the testimony at trial nor raised it in his motion for a new trial. Consequently nothing has been preserved for review. *State v. Kelly*, 539 S.W.2d 106, 110 (Mo. banc 1976).

Defendant next charges the trial court erred in failing to strike the testimony of Stacy Moore due to another instance of a discovery rule violation. The record shows that pursuant to Rule 25.32(A)(1), defendant requested the names and addresses of the state's witnesses together with any written or recorded statements, and existing memoranda, reporting or summarizing part or all of the oral statements. The state supplied the defendant with three police reports prepared by Detective Seymour and a report prepared by Officer Topper containing a summary of statements made by Moore. These reports were compiled by summarizing statements made by Moore and given to Police Officers Kallbrier and Topper shortly after their arrival at the scene of the crime. Defendant claims the court erred by failing to strike Moore's testimony because defendant was not allowed to examine the original notes taken by Officers Kallbrier and Topper. We do not agree. The record shows that after the officers wrote their reports they discarded the original notes. The officers so discarded the original notes long before defendant requested their production. Rule 25.-32(A)(1) directs the state to produce "[t]he names and last known addresses of persons whom the state intends to call as witnesses at any hearing or at trial, together with their written or recorded statements, and *existing* memoranda, reporting or summarizing part of their oral statements." (emphasis added). From the record presented, at the time of defendant's discovery request there were no *existing* memoranda to disclose.[2] Consequently, no violation of the

---

2. We emphasize that in this portion of the opinion we are concerned with the state's fail-

ure to produce notes written by police officers reporting or summarizing witness Moore's oral

discovery rules occurred. Inasmuch as the motion to strike Stacy Moore's testimony was based solely on the state's failure to produce the notes taken by Officers Kallbrier and Topper, the trial court did not err in refusing to strike her testimony.

■ The defendant also alleges the trial court erred in failing to strike the victim's testimony because the prosecution again violated the discovery provisions by failing to disclose the substance of a tape recording containing statements by the victim. This tape recording was supposedly made while Detective Seymour, of the St. Louis County Police Department Sexual Assault Unit, questioned the victim. The defendant made a discovery request which included this tape. The state failed to comply with this request and contended that no such tape recording existed at the time of defendant's request. The record shows that at trial the victim testified her statement to Detective Seymour had been tape recorded. However, Detective Seymour testified he had no recollection of making a tape recording of their conversation. Further, Seymour made a search of the St. Louis County's Police Department offices six months after defendant's request for discovery and could not find the tape recording. Officer Seymour testified that if a recording had been made, the normal police procedure would have been to erase the tape and use it again. Defendant properly asserts that if the recording did exist at the time of his discovery request it was the duty of the prosecutor to "use due diligence and make good faith efforts to cause such materials to be made available to defense counsel" if the item was in possession or control of other governmental personnel. Rule 25.32(C).

Prior to trial defendant filed a motion which sought the imposition of sanctions due to the state's failure to produce the tape recording. Judge Crandall who heard defendant's motion denied it by stating, "I find from the evidence, that if the tape

recording did in fact exist, it no longer exists." Judge Wiesman, heard defendant's renewed motion on the morning of trial and denied it with the admonition that he would strike the victim's testimony, "[I]f the testimony reflects that ... at the time of the discovery request ... that tape was available and was not produced ...." Defendant again renewed his motion prior to the victim's testimony. This motion was also denied and the victim was permitted to testify. The trial court never explicitly ruled whether the tape recording existed. However, in light of the court's admonition to counsel, it must be presumed the learned judge found that the victim's statement was not recorded and therefore did not exist. We agree. The evidence supporting the existence of the recording is equivocal at best. The victim stated she thought her statement was recorded. However, during her interrogation by the police she was emotionally distraught, cried frequently and was at times hysterical. Detective Seymour testified that tape recorded statements of victims are made infrequently and he had no recollection of recording her statement. The trial court was evidently convinced that the victim's statement was not taped. Because it is for the trial court to determine the credibility of the witnesses we cannot state that the trial court erred in believing the state's witnesses and admitting the victim's testimony. *State v. Quigley*, 591 S.W.2d 740, 743 (Mo.App.1979).

■ From the record we must hold that the state did not violate the discovery rules. However, their actions teeter very closely to negligent non-disclosure of requested information. It took the prosecutor six months to request the police department to search for any recording. Contrary to the victim's sworn testimony the police department claimed no such tape recording had been made. If the recording had existed, it had long since been erased or misplaced by the time the prosecutor's office processed defendant's discovery request.

statements. We are *not* here concerned with a statement signed by Moore or written in her hand. The distinction between memoranda reporting or summarizing a witnesses statements

and a witnesses signed or handwritten statements is quite significant for purposes of discovery. *State v. Buckner*, 526 S.W.2d 387 (Mo. App.1975).

We underscore the fact that the rules of criminal discovery are meant to extend fundamental fairness to criminal defendants by permitting them an opportunity to prepare in advance of trial. *State v. Johnson*, 524 S.W.2d 97, 101 (Mo. banc 1975). These rules must be respected. We are reminded of the admonition that noncompliance with the discovery rules "portrays a disturbing trend which should be halted." *State v. Smothers*, 605 S.W.2d 128, 138 (Mo.1980), Sieler dissenting. This court suggests that the better practice would be for the prosecutor, when served with a discovery request, to immediately apprise the police department of the items sought. Such procedure would insure that discovery requests are processed quickly, efficiently and in compliance with the rules.

Affirmed.

WEIER and GUNN, JJ., concur.