**STATE of Missouri, Respondent,**

v.

**Doyle WILLIAMS, Appellant.**

**No. 63587.**

Supreme Court of Missouri,
En Banc.

May 31, 1983.

Rehearing Denied June 30, 1983.

---

Thomas J. Marshall, Public Defender, Moberly, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

GUNN, Judge.

Defendant-appellant, Doyle Williams, was convicted by jury of capital murder, § 565.001, and sentenced to death, § 565.-008(1), giving this Court exclusive jurisdiction of his appeal. Mo.Const. art. V, § 3. The appeal raises a bevy of points urging reversal, each of which will receive subsequent and appropriate treatment. We affirm the judgment of conviction and sentence.

Defendant was convicted of the capital murder of Kerry Brummett. Inextricably woven into Brummett's murder are the circumstances of the burglary of the offices of Dr. D.A. Domann of Auxvasse, Missouri, and his subsequent murder. Critical to the state's case is the testimony of John Morgan, a co-actor with defendant in many nefarious activities. Morgan was given immunity in this case in exchange for his testimony.

The prologue of events leading to defendant's conviction starts in April, 1980. Defendant and John Morgan burglarized the medical offices of Dr. D.A. Domann in Auxvasse taking, among other items, blank prescription pads. Shortly thereafter, defendant and Morgan went to Morgan's trailer home and in the presence of Kerry Brummett discussed means of utilizing the prescription pads. At that time, Brummett, who was Morgan's roommate, saw the prescription pads which bore Dr. Domann's name. Later in the day, defendant made a clumsy effort to pass forged prescriptions in a Columbia drug store, but he was caught in flagrante delicto, arrested and charged with attempt to obtain a controlled substance by fraud.

Faced with the charge arising from the forged prescription, defendant was convinced he could "beat the rap" and confided to Morgan that he could avoid conviction "if the doctor didn't testify that he hadn't signed the prescription"—a presage for the death of Dr. Domann.

Sometime later, on October 7, 1980, defendant revealed to Morgan that he had killed Dr. Domann and placed his body in a Callaway County clay pit. On October 8, 1980, defendant suggested that Kerry Brummett should meet the same fate as Dr. Domann in retribution for having testified

against Morgan in forgery charge proceedings.[1]

The next day, October 9, 1980, a sequence of rather bizarre events involving a multitude of individuals lurched into motion, culminating in Kerry Brummett's murder.

A recounting of the manifold details of clandestine meetings with a variety of individuals and at a farrago of sites is not necessary to resolution of the case. It is sufficient to note that the primary *dramatis personae* were defendant, John Morgan, Kerry Brummett and Betty Coleman, one of at least two of the defendant's serious girl friends.

The basic plan called for the elimination of Kerry Brummett to prevent his testimony against defendant on the burglary of Dr. Domann's office. Betty Coleman was to arrange for a date with Kerry Brummett in Jefferson City and drive him in a borrowed auto to a deserted area in Callaway County adjacent to the Missouri River. Defendant and Morgan would be lying in wait for the kill. The plans ultimately came to fruition. Betty Coleman did meet and drive the unsuspecting Brummett to Callaway County for an early morning rendezvous with Morgan and defendant, who emerged from their place of concealment on the arrival of the Coleman auto. Brummett was dragged from the auto by defendant and Morgan who beat and kicked the hapless and struggling victim about the head and body, defendant utilizing the barrel end of his .357 Magnum on Brummett's head for greatest effect. Using a pair of handcuffs he had previously borrowed from an undiscriminating Auxvasse police officer friend, defendant with Morgan's help was able to bind Brummett's hands behind his back and force him, bleeding and dazed, into the trunk of Coleman's auto.[2] At some point during the period of pernicious activity, Brummett's fervid supplications that he would not testify against defendant went unheeded. Brummett was then driven to a location near the river bank and pulled from the car. Morgan obtained a bumper jack and rope to serve as a body weight. Defendant continued his bodily attack on the handcuffed victim, striking him in the back and sending him stumbling down the riverbank toward the Missouri River's current. Brummett's flight from further attack continued, with defendant in close pursuit, until he ran directly into the river and, still handcuffed, sank beneath the surface, able to rise twice. As Brummett surfaced for the second time defendant ordered Morgan to shoot him. Morgan responded by firing over the victim's head. Remembering that the handcuffs could be traced, defendant waded into the river in an unavailing effort to recover Brummett's handcuffed body, which had disappeared, not to be retrieved from a watery grave until seven days later on a sandbar.

Cause of the victim's death was drowning. His scalp had been lacerated by a blunt instrument. Also, Brummett's gold chain, traces of blood, the victim's hair and the brand of cigarettes smoked by him were found in the car used by defendant and Morgan in moving their prey about. At the point of assault, the victim's eye glasses and plastic name tag were found.

Defendant's defense was alibi by a girl friend, Nina Potts, testifying that she and defendant had been sharing the same bed during the critical period.

The jury found defendant guilty of capital murder with sentence of death. The aggravating circumstance designated was that Brummett was murdered for the purpose of preventing him from testifying in a judicial proceeding. Sec. 565.012.2(12), RSMo, Supp.1982.

Other pertinent facts will be set forth as they relate to the points presented.

Defendant, through counsel and pro se, has raised a substantial number of points of appeal. This review considers all points

---

1. Brummett had been a state's witness in forgery charge proceedings brought against Morgan.

2. By this time Betty Coleman had left the scene in Morgan's auto, leaving her borrowed auto behind for defendant's and Morgan's use.

raised, alleged trial errors and the death sentence. Sec. 565.014.[3]

### Point I

Defendant's initial point raises a technical challenge to § 565.012.2(12), RSMo Supp.1982, alleging that it is violative of Mo.Const. art. III, § 23, which requires that no bill shall contain more than one subject and which shall be clearly expressed in its title. Section 565.012 was amended by the General Assembly in 1980 to add as paragraph 2(12) the following statutory aggravating circumstance to be considered in assessing punishment in capital murder cases: "The capital murder was committed by the defendant for the purpose of preventing the person killed from testifying in any judicial proceeding."

The provision was enacted as part of C.C. S.H.C.S.H.B. 1138, 1279, 1461, 1534, 1537, 1592 and 1634 (80th General Assembly), found at Laws 1980 at 494–99. The legislation was entitled: "An Act to repeal sections 545.885, 558.016, 558.026, 565.012, 566.-030 and 566.060 RSMo 1978, and to enact in lieu thereof twelve new sections relating to sexual assaults and the prevention of such assaults, with penalty provisions."

This matter will be considered under plain error, as it was not raised in motion for new trial. Rule 29.11(d); Rule 29.12(b).

■ The test to determine if a title violates § 23 is whether all of the provisions of the statute fairly relate to the same subject, have a natural connection therewith or are the incidents or the means to accomplish its purpose. *State ex rel. Williams v. Marsh,* 626 S.W.2d 223, 228 (Mo. banc 1982). This constitutional provision should be liberally construed. *State ex rel. McClellan v. Godfrey,* 519 S.W.2d 4, 9 (Mo. banc 1975).

■ The bill in question related to sexual assaults and the prevention of such assaults, with penalty provisions. Defendant concedes that the aggravating circumstance paragraph 2(11), added in the same bill as paragraph 2(12), "[t]he capital murder was committed while the defendant was en-gaged in the perpetration or in the attempt to perpetrate the felony of rape or forceable rape or the felony of sodomy or forceable sodomy," was part of a logical treatment of sex crimes. However, he asserts that § 565.012.2(12), RSMo Supp.1982, pertains only to the killing of a witness and is unrelated to sexual assaults or the prevention thereof. But defendant's reading of the act is entirely too narrow. Section 565.-012.2(12), RSMo Supp.1982, is but a part of the Missouri Criminal Code enacted in 1977 and as referred to in defendant's counsel's brief is part of the overall "Crimes and Punishment" heading.

Murder committed to prevent a witness from testifying in a sexual assault case is not unique. *See State v. Blair,* 638 S.W.2d 739, 760 (Mo. banc 1982). But the fact there is no sexual assault involved does not prevent the aggravating circumstance of § 565.012.2(12), RSMo Supp.1982, from passing constitutional muster. It certainly falls within the broad descriptive category of "Crimes and Punishment."

### Point II

Defendant next alleges that the trial court erroneously overruled his motion for continuance filed before trial.

May 29, 1981, the trial judge granted defendant's request for a continuance and set the date of trial for September 14, 1981. On August 28, 1981, co-counsel, Charles G. Hyler, entered his appearance and requested another continuance, which was denied on September 3, 1981. The trial commenced September 14, 1981 as scheduled.

■ Application for a continuance is addressed to the sound discretion of the trial court and an appellate court will not interfere unless it clearly appears that such discretion has been abused. *State v. Oliver,* 572 S.W.2d 440, 445 (Mo. banc 1978). On the record, no abuse of discretion appears. The trial date was set three months before trial was to commence. On August 24, 1981, Charles G. Hyler entered his appearance as co-counsel with the understanding

---

**3.** Statutory references are to RSMo 1978 unless otherwise indicated.

that the public defender, Thomas Marshall, would remain on the case. Co-counsel Marshall had represented defendant from the inception of the case, at least six months prior to the trial date of September 14, 1981. There was no showing that Marshall was not ready to proceed on the scheduled trial date. Defendant has failed to sustain the burden of demonstrating that the denial of a continuance was prejudicial to his case. *State v. Haggard,* 619 S.W.2d 44, 46 (Mo. banc 1981), *vacated and remanded on other grounds,* —— U.S. ——, 103 S.Ct. 1171, 75 L.Ed.2d 423 (1983). There was no abuse of discretion by the trial court's action, particularly as defendant was not denied able representation. *State v. Turner,* 623 S.W.2d 4, 11 (Mo. banc 1981), *cert. denied,* 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982).

## Point III

■ Defendant contends that the state failed to disclose a statement made by John Morgan on October 19, 1980, resulting in fundamental unfairness and prejudice. In support, defendant cites several court rules requiring disclosure and imposing sanctions for the failure to disclose. However, the fatal flaw in defendant's argument is that he fails to proffer any probative evidence that a written statement made by John Morgan on October 19, 1980 did in fact exist. Defendant based his request for the statement on a police report which stated that an officer "had previously interviewed Johnnie Morgan on 10–19–80, see attached rights waiver." The prosecuting attorney, after examining her files and questioning the police officers, determined that no written statement existed for that date. In the absence of a positive showing that a written statement did in fact exist, there is no violation of the discovery rules. *See State v. Doney,* 622 S.W.2d 227, 230 (Mo.App. 1981); *State v. Leigh,* 580 S.W.2d 536, 549 (Mo.App.1979), reversed on other grounds, *Leigh v. State,* 639 S.W.2d 406 (Mo.App. 1982).

## Point IV

■ Defendant, relying on *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), argues that Missouri lost jurisdiction over his case when he was forced to travel from Illinois without any pretransfer hearing. Defendant had been in the custody of federal authorities on other charges. Through the Agreement on Detainers, § 222.160 (repealed 1982), Missouri had obtained temporary custody of him. For some reason, he was apparently taken to Illinois and then returned to Missouri in the custody of Missouri law enforcement officers. He now contends that he was improperly denied a pretransfer hearing under Article IV of the Agreement on Detainers.

*Cuyler* offers defendant no solace in this matter, for it does not stand for a proposition that failure to provide a pretransfer hearing deprives the transferee state of jurisdiction to try his case. Rather, when the accused has been brought within the custody of the demanding state, the legality of extradition is no longer a proper subject of any legal attack by him. *Huffman v. State,* 487 S.W.2d 549, 553 (Mo.1972).

*State v. Johnson,* 457 S.W.2d 762 (Mo. 1970), following and quoting *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), *reh'g denied,* 343 U.S. 937, 72 S.Ct. 768, 96 L.Ed. 1344 (1952) states:

This Court has never departed from the rule announced in *Ker v. Illinois,* 119 U.S. 436, 444 [7 S.Ct. 225, 229, 30 L.Ed. 421], that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a "forcible abduction." No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted

to escape justice because he was brought to trial against his will.

*State v. Johnson,* 457 S.W.2d at 764.

Defendant's point is ruled against him, as any alleged error in failing to grant a pre-transfer hearing did not divest the trial court of jurisdiction to hear the case.

## Point V

■ Defendant postulates that evidence of other crimes was devastating to his cause, and the trial court erred in admitting the following: 1) evidence that he and Morgan had burglarized Dr. Domann's office; 2) evidence that defendant attempted to obtain controlled substances with forged prescription pads taken in the burglary; 3) Morgan's testimony relating defendant's admission of murdering Dr. Domann and disposing the body in a Callaway County clay pit.

It is aphoristic that reference to other crimes unrelated to the case on trial violates a defendant's right to be tried for the offense with which he is charged unless such proof has some legitimate tendency to establish defendant's guilt of the crime charged. *State v. Shaw,* 636 S.W.2d 667, 671 (Mo. banc 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982); *State v. O'Neal,* 618 S.W.2d 31, 34 (Mo. 1981). But such evidence is admissible to prove the crime charged when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime on trial. *State v. Trimble,* 638 S.W.2d 726, 732 (Mo. banc 1982).

■ The evidence of the other crimes admitted in this case was relevant to establish both motive and common scheme or plan. Morgan testified that the victim was present when he and defendant discussed the robbery and how to have the prescriptions filled. Defendant had a motive to kill Brummett as a potential witness. Further, evidence of the murder of Dr. Domann and

testimony that "the same thing ought to happen to [Brummett] that happened to Doctor Domann" demonstrated a common plan or scheme to eliminate potential witnesses that connected defendant to the burglary of Domann's office and the subsequent attempt to obtain controlled substances. In this instance, evidence of the other crimes was relevant, and there was no error in its admission.

## Point VI

John Morgan had been granted immunity in exchange for his testimony against defendant. The immunity extended beyond defendant's involvement and to cases involving other crimes and individuals, and defendant's counsel objected to any reference to the latter. The trial court ruled, however, that testimony regarding other crimes and persons would be allowed subject to certain limitations, *i.e.,* no identification could be made of specific individuals.

During her redirect examination of Morgan, the prosecutor asked whether he "[had] to testify against a Nina Potts?" The defense promptly objected. During the bench conference, it was apparent that the prosecutor had misunderstood the court's instructions as to the specific information she could elicit from Morgan. The objection was sustained and the redirect resumed. Defendant contends the trial court erred in failing to direct a mistrial, in that the prosecutor had disregarded specific instructions.

■ The error complained of does not mandate the drastic remedy of mistrial. Morgan did not answer the question, and, generally, when an improper question is asked but not answered, there is no prejudicial error. *State v. Harvey,* 625 S.W.2d 198, 201 (Mo.App.1981). The transcript does not bear out defendants' argument that the prosecutor "willfully" disregarded the specific instructions of the court. Furthermore, the defense's objection was sustained by the court, and no further relief was

requested.[4] The granting of a mistrial rests largely in the discretion of the trial court, and the appellant court determines only whether the trial court abused its discretion. *State v. Purnell,* 621 S.W.2d 277, 283 (Mo.1981). Based on the facts presented, no error appears by the court's failing to grant a mistrial, whether or not requested.

### Point VII

■ A state's witness—Kay Lepley—testified that five days prior to the murder she had seen defendant in possession of a pair of handcuffs. This testimony was merely cumulative, as the Auxvasse police officer had already revealed the discomfiting contretemps that he had given his handcuffs to defendant under thoroughly embarrassing circumstances. That was the only significance of her testimony. On appeal, defendant contends that Ms. Lepley had been granted immunity from prosecution for an unrelated crime in exchange for her testimony but that the state failed to make disclosure of that circumstance—a fact that would warrant a new trial.

The record appears to belie defendant's contention, for it is undisputed that the prosecutor gave fair notice to defendant's attorney of possible immunity for Ms. Lepley. The unverified allegation that the prosecution had granted immunity to Ms. Lepley does not prove itself and cannot be considered unless substantiated by the record. *State v. Bluitt,* 592 S.W.2d 752, 754 (Mo. banc 1980); *State v. Childers,* 313 S.W.2d 728, 731 (Mo.1958). The unrefuted record in this case is contrary to defendant's contention.

### Point VIII

Defendant suggests that his conviction should be set aside, because Morgan's testimony upon which the state's case heavily depended was inherently unreliable.

■ The following fundamental legal doctrine renders this point without merit: In determining sufficiency of the evidence to support the verdict, this Court accepts as true all evidence whether circumstantial or direct, tending to prove defendant guilty together with all reasonable inferences supportive of the verdict. *State v. Brooks,* 618 S.W.2d 22, 23 (Mo. banc 1981). The determination of the credibility of a witness is within the peculiar province of the jury. *State v. Newberry,* 605 S.W.2d 117, 121 (Mo.1980). Though defendant argues that Morgan was an admitted drug addict whose testimony was without probative value, those facts affecting his credibility were before the jury. It was for the jury to decide how much credence to give his testimony. *See State v. Porter,* 640 S.W.2d 125 (Mo.1982). Furthermore, testimony of a single witness may be sufficient to constitute substantial evidence to make a submissible case. *State v. Porter,* 640 S.W.2d at 128; *State v. Ball,* 622 S.W.2d 285, 291 (Mo.App.1981). The conclusion that there was sufficient evidence to support the verdict is amply supported by the record.

### Point IX

■ Defendant next argues that the trial court erred in failing to reduce the charge from capital murder to "something other than capital murder." The point of this argument is that as a matter of law defendant's maximum crime could be only manslaughter, for the reason that while being chased, Kerry Brummett ran into the river and more or less perished at his own hand.

According to defendant's reasoning, Brummett's death was not caused by any direct action of Morgan or him, and "any murder that may have been planned by Morgan and appellant did not take place." This argument is too fenestrated to hold logic.

Defendant is legally accountable for Brummett's death if the direct or immediate cause of death resulted naturally or proximately from his own unlawful act. *State v. Brandt,* 467 S.W.2d 948, 951 (Mo. 1971). It does not alter the result that

---

4. Defendant's counsel states that a mistrial was requested, but a review of the transcript indicates that the request pertained to another matter.

Brummett died as a result of drowning which may have differed from the original plan but nonetheless accomplished the intended result. *See State v. Bolder,* 635 S.W.2d 673, 680 (Mo.banc 1982). The unlawful act need not be the immediate cause of death. It is enough that it be a contributing proximate cause, although other contributing causes may have intervened. *State v. Bates,* 607 S.W.2d 753, 759 (Mo. App.1980). The fact that the victim ran into the river to escape his attackers does not alter the defendant's liability for the death. Hence, the trial court did not err in refusing to reduce the charge from capital murder to manslaughter.

### Point X

■ Defendant also suggests error in failing to instruct on first degree murder in kidnapping but accepts that *State v. Baker,* 636 S.W.2d 902 (Mo. banc 1982) is controlling. In *Baker,* this Court held that a first degree murder instruction need not be given in a capital murder charge. *Id.* at 904. This holding of *Baker* has been reaffirmed more recently in a number of cases, *e.g., State v. Betts,* 646 S.W.2d 94, 96 (Mo. banc 1983); *State v. Blair,* 638 S.W.2d at 747. There was no error in failing to give a first degree murder instruction.

### Point XI

■ Defendant raises the point that the death penalty is cruel and unusual punishment in violation of the eighth amendment to the United States Constitution and article I, § 21 of the Missouri Constitution and violates due process of law. Acknowledging that the issue has been considered and ruled adversely to his position, he nonetheless urges this Court to reconsider its position regarding the death sentence.

The constitutionality of the death penalty was carefully scrutinized in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The Missouri statute is similar to that of Georgia, and therefore this Court has accepted the analysis of *Gregg* finding that the death sentence provisions of Georgia's statutes are constitutional. *See State v. Newlon,* 627 S.W.2d 606, 612 (Mo. banc 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982). Additionally, other defendants have unavailingly argued, as does defendant, that the death penalty violates the due process clause of art. I, § 10, the cruel and unusual punishment clause of art. I, § 21, and the "natural right to life" clause of art. I, § 2 of the Missouri Constitution. These arguments have been rejected by this Court. *State v. Bolder,* 635 S.W.2d at 680; *State v. Newlon,* 627 S.W.2d at 611–13. Defendant's suggestion that the Court reconsider its position on the death penalty is unsupported by any compelling argument. Accordingly, this Court follows its previous holdings and finds that the death penalty is not unconstitutional.

### Point XII

■ Defendant next attacks the constitutionality of § 565.012.2(12), RSMo Supp. 1982, contending that it is overbroad and vague. Section 565.012.2 delineates twelve statutory aggravating circumstances. The jury must find at least one of the enumerated statutory circumstances or the death penalty cannot be imposed. § 565.012.5. The jury, imposing the death penalty, designated as an aggravating circumstance that "[t]he murder of Kerry Brummett was committed by the defendant for the purpose of preventing Kerry Brummett from testifying in any judicial proceeding."

Defendant professes that the aggravating circumstance (*i.e.,* § 565.012.2(12)) must fail because it does not require that he knows that the victim was a witness in a judicial proceeding and that the victim was killed to prevent such testimony. He states there was insufficient evidence to find that he knew that the victim was a witness in any judicial proceeding. Defendant reasons that a statutory scheme which permits the jury to return a death penalty verdict for killing a witness is impermissibly vague and that the death sentence in this case must therefore be set aside.

Defendant's argument fails for lack of any support. The whole point of the killing as supported by the record was to eliminate Brummett as a witness in a judicial proceeding to be held. There is no require-

ment that the witness is either scheduled to testify or actually have testified. Further, there was ample evidence that defendant considered Brummett a potential witness for the Dr. Domann affair, as the victim was with Morgan and defendant as they discussed the burglary and proposed disposition of the stolen prescription pads.

That portion of defendant's argument which contends that § 565.012.2(12) is unconstitutionally vague must also fail. A statute is unconstitutionally vague when it either forbids or requires the doing of an act in terms so abstruse that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Matter of Trapp*, 593 S.W.2d 193, 202 (Mo. banc 1980), appeal dismissed, 456 U.S. 967, 102 S.Ct. 2226, 72 L.Ed.2d 840 (1982); *State v. Thomas*, 625 S.W.2d 115, 126–27 (Mo.1981). "Due process requires that all 'be informed as to what the State commands or forbids.'" *Smith v. Goguen*, 415 U.S. 566, 574, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974). Section 565.012.2(12) unambiguously informs what conduct may be considered as an aggravating circumstance—the murder of a person to prevent testimony in a judicial proceeding. That is clear enough. Persons of common intelligence do not need to guess what the statute means.

## Point XIII

Defendant maintains that the death sentence in this case was imposed under the influence of passion and prejudice because of the admission of evidence of other crimes. The admission of evidence complained of as prejudicial or inflammatory rests with the sound discretion of the trial judge with relevance as the main criterion. *State v. Berry*, 609 S.W.2d 948, 954 (Mo. banc 1980). As discussed in Point V, the evidence of other crimes was relevant to the murder of Kerry Brummett and properly admitted. The fact that such evidence might be prejudicial is not dispositive. "Any incriminating evidence is by definition prejudicial." *State v. Shaw*, 636 S.W.2d at 672.

## Point XIV

Next, is the allegation that the death penalty in this case is excessive and disproportionate to the penalty imposed in similar cases. This case presents the first time the death penalty has been imposed in Missouri based on the aggravating circumstance relating to murder to prevent a person from testifying in any judicial proceeding.

*State v. Blair*, 638 S.W.2d 739 (Mo. banc 1982) was decided prior to the enactment of statutory aggravating circumstance § 565.-012.2(12) but involved a similar situation. The defendant in *Blair* was offered a sum of money to keep the victim from testifying in a rape case. This Court, in discussing murder to prevent the victim from testifying, found the following:

It is seldom that a person intentionally becomes a witness to an event. It most often occurs by the happenstance of just being there. But when a person is a witness, as the victim or otherwise, that person becomes indispensable to the administration of justice. * * * Parties's rights to summon witnesses in their behalf is constitutionally protected. In short, a witness is the only person who, as an individual, is singularly indispensable to the fair administration of justice. The interference with the appearance of necessary witnesses in court and the killing of a witness to prevent the witness from testifying, as here, is absolutely intolerable. From the public standpoint it cuts the very heart out of a justice system necessary to maintenance of freedom. It is difficult to conceive of a crime more inimical to our society than the killing of a witness to prevent the witness from testifying. Prospective offenders who might consider killing a witness must be deterred. Such a purpose is served by imposing the death penalty.

*Id.* at 760.

*Blair* is thus felicitious.

Considering the crime and the defendant, as required by § 565.014.3(3), we find no basis for holding that the death penalty was

either excessive or disproportionate to the penalty imposed in similar cases.

### Point XV

■ Defendant presented five witnesses at the hearing on his motion for new trial for the purpose of offering exculpatory evidence on his behalf. Two of the persons related that while in jail, Morgan stated that he changed his story to obtain immunity. The trial judge overruled the motion for new trial finding that the evidence was not credible.

To receive a new trial based on newly discovered evidence the following must be established: (1) the evidence has come to the knowledge of the defendant since the trial; (2) it was not owing to want of due diligence that it was not discovered sooner; (3) the evidence is so material that it would probably produce a different result on a new trial; and (4) it is not cumulative only or merely impeaching the credit of the witness. *State v. Taylor,* 589 S.W.2d 302, 305 (Mo. banc 1979).

■ Defendant offers no explanation why these witnesses were not discovered before the trial, and considering that each was a friend of defendant's or Betty Coleman's, it appears that due diligence would have made them available for trial. The testimony of each witness was either cumulative of Nina Potts' testimony (*i.e.,* that defendant was home the evening of the murder) or intended as impeachment of the testimony of John Morgan. Finally, it cannot be said that the evidence is so material that it would probably produce a different result on a new trial. The trial court found the evidence was not credible, and it is vested with substantial discretion in deciding whether a new trial should be granted because of newly discovered evidence. Such is generally not a favored ground for relief. *State v. Harper,* 473 S.W.2d 419, 421 (Mo. banc 1971).

It is significant that each witness was an acquaintance of defendant or Betty Coleman; yet, none came forward with evidence until after the trial. There was no abuse of discretion in the trial court's refusal to grant a new trial on the basis of newly discovered evidence.

### Defendant's Pro Se Brief

Defendant has filed a pro se brief which also raises a substantial number of points which are considered under the cloak of plain error.

### Point I

Defendant's first attack is on the state's verdict directing instruction, following MAI–CR2d 15.02, which required a finding by the jury that "The defendant caused the death of Kerry Brummett by beating him and drowning him. . . ." He argues that the instruction was misleading and confusing to the jurors, particularly as there was no evidence to support the use of the word "beating."

He also maintains that the instruction does not reflect the requirements for finding a defendant guilty of capital murder pursuant to § 565.001. According to defendant, the difference is that § 565.001 requires that a person kills or causes the killing of another human being while the verdict director only required the jury to find that defendant caused the death of Kerry Brummett. Defendant contends a person may be guilty of causing the death of someone and yet not be gulty of killing as defined in § 565.001.

■ For instructional error to rise to the level of plain error, the trial court must have so misdirected or failed to instruct the jury as to cause "manifest injustice or miscarriage of justice." *State v. Bolder,* 635 S.W.2d at 693; *State v. Moland,* 626 S.W.2d 368, 370 (Mo.1982). It is a basic principle with respect to submission of instructions that they should not be given if there is no evidence to support them. *State v. Daugherty,* 631 S.W.2d 637, 639 (Mo.1982). Defendant maintains there was no evidence that the beating caused the death of Kerry Brummett.

■ There was ample evidence at trial showing that the victim was beaten, handcuffed and drowned. The existence of medical testimony to the effect that drowning was the cause of death does not render

this instruction so misleading as to result in manifest injustice. Although the beating may not have been the direct cause of death, the beating followed by the drowning of the victim were related incidents proximately causing his death.

Defendant's point in this regard is desolate of merit. Ready support for rejecting this contention is found in *State v. Daugherty, supra,* in which the phrase "causing the death of the victim" by "striking and suffocating" was similarly attacked and repulsed. In *Daugherty,* the defendant contended that the use of "striking" misled the jury into believing that the cause of death was both striking and suffocating. *Daugherty* holds that "[t]he fact that the medical expert's opinion included suffocation and hemorrhage as causes of death does not invalidate other aspects of the attack as a contributing factor." *Id.* at 640. In this case, there was no prejudice in the submission of the verdict director. The jury was required to find an additional element to convict defendant of capital murder. The submission actually placed a heavier burden of proof on the state. *See State v. Blackmon,* 587 S.W.2d 292, 294 (Mo.App.1979) (instruction placing heavier burden than required is not prejudicial error).

██ Defendant's second attack on the verdict director is also without merit. Section 565.001 uses the term "kills or causes the killing of another human being." Use of the disjunctive "or" indicates an alternative which generally corresponds to the word "either." *Hawkins v. Hawkins,* 511 S.W.2d 811, 812 (Mo.1974). Therefore, a person is guilty of capital murder if he either kills or causes the killing of another. The submitted instruction comports with the requirements of § 565.001 and did not misdirect the jury.

### Point II

Defendant also urges that the state failed to prove the elements of capital murder and corpus delicti. The facts previously indited dispose of this point, and no further discourse is necessary. The elements were proven. *See State v. Gantt,* 644 S.W.2d 656, 662 (Mo.App.1982) on elements of proof of corpus delecti. The elements of capital murder are precisely set forth in § 565.001. *See State v. Craig,* 642 S.W.2d 98, 101 (Mo. banc 1982); *State v. Mannon,* 637 S.W.2d 674, 678 (Mo. banc 1982); *State v. Strickland,* 609 S.W.2d 392, 394 (Mo. banc 1980) on definition of various elements of capital murder.

### Point III

Defendant professes that he was denied due process of law because the legal documents necessary to prepare his brief were taken from him by the warden of the prison. In his brief, defendant suggests that because of institutional policies he turned over legal documents to an inmate for legal assistance. These documents, according to defendant, were taken from the inmate by the warden or his agents thereby preventing briefing all the points of error.[5]

██ These claims are not substantiated in the record of this case. There is no indication of what legal documents were taken or why the documents were taken other than what defendant states in his brief. Assertions made by an appellant in the brief but not shown in the record are not evidence. *See State v. Harlin,* 556 S.W.2d 42, 44 (Mo. banc 1977), *vacated and remanded on other grounds,* 439 U.S. 459, 99 S.Ct. 709, 58 L.Ed.2d 733 (1979); *State v. Williams,* 623 S.W.2d 552, 554 (Mo.1981) (assertions in brief or by counsel in motion for new trial without other support are not entitled to consideration). Accordingly, this point is denied.

---

5. Defendant states he attempted to recover these documents through actions filed in this Court and the United States Supreme Court. This Court denied defendant's writ of habeas corpus for failure to exhaust administrative remedies, being advised that the matters alleged were being addressed by on-going admin- istrative procedures within the Department of Corrections. *Williams v. State,* No. 64318 (writ of habeas corpus denied, October 18, 1982). Defendant's petition for writ of certiorari was denied by the United States Supreme Court. *See Williams v. Missouri,* —— U.S. ——, 103 S.Ct. 746, 74 L.Ed.2d 966 (1983).

### Point IV

Defendant maintains he was denied effective assistance of counsel because his attorney failed to object to the state's evidence that he was on parole. This point of contention arises from a statement made by state's witness Morgan in the following colloquy:

Q. (by Mrs. Garber) [prosecutor]: Mr. Morgan, did Mr. Williams ask you to do anything while you were at the clay pits?

A. He told me that he thought his parole was going to be revoked and that he figured the doctor would float right away and he wanted me to weight him down later on if he floated.

Defendant asserts his counsel should have objected to Morgan's answer as it put his past criminal history before the jury.

 Ordinarily, a claim of ineffective assistance of counsel is properly handled under Rule 27.26, rather than on appeal. *State v. Mitchell,* 620 S.W.2d 347, 348 (Mo. banc 1981). However, in this situation the transcript reveals that counsel did in fact object to Morgan's response (albeit on different grounds than now proffered by defendant), and the court sustained the objection directing the jury to disregard Morgan's statement. On these facts, no prejudice to the defendant resulted, and the point is denied.

### Point V

Defendant's final point on this appeal concerns his argument that the prosecutor suppressed evidence that, contrary to state's evidence, Kerry Brummett was observed leaving for his fatal rendezvous with someone other than Betty Coleman.

At the motion for new trial, a friend of defendant's—Pam Mealey—testified that she observed Brummett leave a restaurant with a woman who was not Betty Coleman and that she related this information to the

Callaway County sheriff's office late in October, 1980. In January, 1982, defendant submitted to this Court the affidavit of another individual averring that he had seen Brummett leaving the restaurant on the night he was murdered in the company of a woman who was not Betty Coleman and that this information had been previously given to police officers.

Defendant argues that the state suppressed this evidence which violated his due process rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady,* the Court found that:

[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Id.* at 87, 83 S.Ct. at 1196–97.

*Brady* was further refined in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), which discussed three situations in which *Brady* applies, each involving the discovery after trial of information which had been known to the prosecution but unknown to the defense. *Id.* at 103, 96 S.Ct. at 2397. That portion of *Agurs* felicitious here according to defendant would relate to the general request of the state for exculpatory material which is not produced. *Id.* at 103–07, 96 S.Ct. at 2397–99.[6]

The Court in *Agurs* discussed the proper standard of materiality applicable when a general request is made and determined that "the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *United States v. Agurs,* 427 U.S. at 112–13, 96 S.Ct. at 2401–02; *State v. Thompson,* 610 S.W.2d 629, 633 (Mo.1981), *cert. denied,* 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 122 (1981).

 Viewing the record as a whole, the evidence adduced by the defendant does

---

6. Defendant's general request was for "any material or information within the possession or control of the State, which tends to negate the guilt of Defendant as to the offense charged, mitigate the degree of the offense charged or reduce the punishment."

not rise to the level of materiality necessary to warrant a new trial. The trial judge found Ms. Mealey's testimony not to be credible. The testimony of the later affiant, evidenced by an affidavit, was not presented at the hearing on the motion for new trial and was submitted to this Court more than three months after trial and more than one month after the hearing on defendant's motion for a new trial. As the record only includes the affidavit, there is no evidence as to whether the prosecutor was aware of it or any development of evidence regarding its veracity or reliability. These deficiencies aside, the proffered evidence does not establish a reasonable doubt as to defendant's guilt. Numerous witnesses testified that Brummett was to meet Betty Coleman at a restaurant the night in question. Two waitresses who worked at the restaurant identified Betty Coleman as the person leaving the restaurant with Brummett that evening. The trial judge found Ms. Mealey's testimony not to be credible, and there is no means to test the credibility of the affidavit. The evidence in question is not so material as to inject reasonable doubt where none previously existed. A new trial is not automatically required when evidence is disclosed after trial which might possibly be useful to the defense but not likely to have changed the verdict. *State v. Nolan,* 499 S.W.2d 240, 250 (Mo.App.1973). We find no basis on these facts for a new trial.

Other points raised in defendant's pro se brief have been considered previously.

After a complete review of the alleged trial errors raised in both defendant's pro se brief and counsels' brief and a review of the death sentence as statutorily mandated, we affirm the conviction and sentence.

Judgment affirmed.

RENDLEN, C.J., HIGGINS and BILLINGS, JJ., and REINHARD, Special Judge, concur.

DONNELLY, J., concurs in result.

WELLIVER, J., dissents in separate opinion filed.

BLACKMAR, J., not sitting.

WELLIVER, Judge, dissenting.

I respectfully dissent.

The principal opinion holds that the trial court did not err in failing to instruct the jury on first degree murder because *State v. Baker,* 636 S.W.2d 902, 904–05 (Mo. banc 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983), held that first degree murder is not a lesser included offense of capital murder. The principal opinion, however, overlooks the fact that only last month this Court held that the decision in *Baker* "is not retroactive, *but prospective,* in its application." *State v. Goddard,* 649 S.W.2d 882, 893 (Mo. banc 1983) (emphasis added). *Baker* was decided August 23, 1982, almost a year after the trial in this case was held September 14–17, 1981. Under the law that existed before *Baker* was decided, trial courts were required to instruct the jury on first degree murder whenever the evidence justified such an instruction. *State v. Fuhr,* 626 S.W.2d 379, 379 (Mo.1982). *See State v. Daugherty,* 631 S.W.2d 637, 645 (Mo.1982). Because *Baker* does not apply retroactively,[1] appellant was entitled to an instruction on first degree murder in this kidnapping-murder case. It is no answer, as the principal opinion implies, that appellant concedes the applicability of *Baker.* The briefs in this case were filed, and this case was argued, well before *Goddard* was decided.[2] In

1. The principal opinion notes that *Baker* has been reaffirmed recently in a number of cases and cites *State v. Betts,* 646 S.W.2d 94, 96 (Mo. banc 1983), in support of that proposition. It is clear that the Court in *Betts* applied *Baker* retroactively to January 1, 1979, the date the new lesser included offenses statute, § 556.046, RSMo 1978, became effective. The trial in *Betts* occurred in October 1980, and the Court

noted that "*Baker* was in effect at the time of trial." 646 S.W.2d at 95–96. Interestingly, *Goddard,* in announcing that *Baker* was to be applied only prospectively, made no mention of the prior contrary holding in *Betts.*

2. Appellant's attorney filed a brief for appellant November 18, 1982, and appellant filed pro se briefs December 28, 1982, and January 17, 1983. The state's brief was filed January 3,

affirming appellant's conviction and death sentence, the principal opinion once again "demonstrates the classic catch-22 into which the majority has written the Court in an effort to affirm criminal convictions." *Goddard,* 649 S.W.2d at 890 (Welliver, J., dissenting).

1983. This case was argued January 27, 1983.

*Goddard* was decided April 26, 1983.