**STATE of Missouri, Respondent,**

v.

**Doyle WILLIAMS, Appellant.**

**No. 46737.**

Missouri Court of Appeals,
Eastern District,
Northern Division.

Nov. 8, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 28, 1983.

Application to Transfer Denied
Jan. 17, 1984.

Thomas R. Motley, Public Defender, Hannibal, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

REINHARD, Judge.

Defendant was convicted of the capital murder of Dr. A.H. Domann of Auxvasse, Missouri, and sentenced to life imprisonment without possibility of probation or parole for fifty years. As a sentence of death was not imposed, we have jurisdiction. Mo. Const. Art. V, § 3.

In a related case, defendant was convicted of the murder of Kerry Brummett and sentenced to death. This conviction and sentence were affirmed in *State v. Williams*, 652 S.W.2d 102 (Mo. banc 1983).

The state's principal witness in this trial, as well as the trial of defendant for the murder of Kerry Brummett, was John Morgan. The evidence established that Dr. A.H. Domann was to be a witness against defendant on a charge that he forged the doctor's name to a prescription. On several occasions, Morgan and defendant discussed killing Dr. Domann to prevent the doctor from testifying, the most recent time in late September, 1980. In July, 1980, Barbara Rea overheard defendant and his girlfriend, Betty Coleman, discussing a doctor. One of the two stated that "we have to get rid of the doctor."

Dedra Herdeg, a service station attendant in Auxvasse, testified that on Sunday morning, October 5, 1980, defendant and another person came into the station and defendant requested instructions to Dr. Domann's residence.

That afternoon Barbara Rea, who lived in a trailer outside Brazito, Missouri, had a party at which defendant and others were present. At that time, defendant had a briefcase containing several weapons, including an old "army issue" .45 caliber automatic. Betty Coleman, his girlfriend, also had a .45 caliber weapon at the trailer that day. Defendant and the other guests shot target practice at a trash dump outside the trailer with the .45 caliber guns and other weapons.

On Monday morning, October 6, 1980, at about 5:45 a.m., a neighbor of Dr. Domann saw defendant's white car on three separate occasions in front of the doctor's house. Dr. Domann was last seen alive between 8:15 and 9:10 that morning. He was seen driving south on U.S. Highway 54 between Mexico and Auxvasse then make an abrupt U-turn and drive north.

Dr. Domann's body was recovered from the Hazelrigg clay pit located off of Highway 54 north of Auxvasse on October 11, 1980, with three .45 caliber bullets in his body, any one of which could have caused death. On October 14, and subsequent days, John Morgan was interrogated by police. He told the police that on October 7, the defendant took him to a clay pit north of Auxvasse and told him that he had killed Dr. Domann the day before. Under some pretext, defendant had lured the doctor off the highway onto a gravel road with large haybales nearby and shot him with a World War II .45 caliber automatic which Morgan had sold to defendant shortly before. According to Morgan, defendant drove the doctor's car to the clay pit and dumped his body in the water. Defendant then drove the doctor's car via I–70 to St. Louis. En route, he dismantled the murder weapon and scattered the pieces along the highway. He parked the car in the long term parking garage at the St. Louis airport.

On October 14, the doctor's car was found in the long term parking garage in the St. Louis airport. There was blood on the floor and a .45 caliber bullet was extracted from the driver's seat. Soil from the front car mat matched soil taken from the clay pit where the body was found. Police found two .45 caliber shell casings near the Charles Spradlin farm, which was located on a gravel road off of Highway 54 with large haybales nearby. A resident testified to hearing three gun shots at that location on a morning in early October. Ten expended .45 caliber bullets and eight empty .45 caliber cartridge casings were recovered near the trash dump at Barbara Rea's trailer. Expert testimony established that five of those expended bullets were fired from the same weapon that killed the doctor. Expert testimony also established that five of the shell casings found at the trailer were fired from the same weapon that ejected the two shell casings found at the Spradlin farm. Betty Coleman's .45 caliber weapon was produced in court and an expert testified that neither the shell casings recovered at the Spradlin farm nor the bullets recovered from the doctor's body or the

car seat came from her weapon. The murder weapon was never recovered.

In addition, the evidence established that on September 24, 1980, defendant purchased a magazine for a Colt automatic .45. After defendant was arrested, a Federal brand .45 caliber bullet was found in his car. This was the same brand of ammunition as found at the Rea trailer and at the Spradlin farm.

Defendant did not testify, but presented an alibi defense.

■ Defendant's principal contention on appeal is that the trial court erred in overruling his motion to suppress identification testimony of Dedra Herdig because her in-court identification of the defendant was the result of an impermissibly suggestive photo lineup and hypnotically refreshed or enhanced memory. After conducting a pretrial evidentiary hearing on this motion, the trial court denied it. At trial, the witness positively identified defendant. Defendant made no objection to the in-court identification. Defendant's failure to object to the in-court identification preserves nothing for appellate review. *State v. Purnell*, 621 S.W.2d 277, 286 (Mo.1981); *State v. Berry*, 609 S.W.2d 948, 953 (Mo. banc 1980).

■ Nonetheless, we will review the point to determine whether plain error occurred. Rule 30.20. Defendant bears the burden of demonstrating the alleged error rose to the level of manifest injustice or miscarriage of justice.

At the hearing on the motion to suppress and during the state's case at trial, it was established that the police first interviewed Dedra Herdeg on October 13, 1980, after learning that she had given directions to Dr. Domann's house to someone. At that time, she was shown 7 photographs, five men and two women. She identified the photograph of defendant as the man who came into the station between 10:00 and 10:30 on the morning of October 5, and asked for directions to Dr. Domann's house. The police came to the service station later and showed her the same 7 photographs. She identified defendant's photograph for

the second time. On October 17, 1982, police officers interviewed her a third time at the police station. At that time, she was placed under hypnosis for the purpose of helping her "to remember a vehicle or the direction that they were leaving in." The trial court granted defendant's motion to suppress the photographic lineup, but denied the motion to suppress any identification at trial. After the state closed its case, defendant presented evidence that Dedra Herdeg was shown a photograph of defendant while under hypnosis. No other circumstances surrounding the hypnosis were established.

■ Defendant alleges the in-court identification was the result of improperly suggestive photo lineup, as well as the hypnotically refreshed memory. In *Greer v. State,* 609 S.W.2d 423 (Mo.App.1980), *vacated on other grounds,* 450 U.S. 1027, 101 S.Ct. 1735, 68 L.Ed.2d 222 (1981), the court announced the rule that the fact that a witness' memory had been refreshed by pre-trial hypnosis was a matter of the witness' credibility, not competency. Defendant urges that in light of more recent cases *Greer* should be reexamined. We find no need for that in this case. On the record before the court there was no evidence that Dedra Herdeg's memory, as it related to her identification of defendant, had been in any way affected by hypnosis.

■ As to the two photo displays shown the witness before trial, the test is not whether that out-of-court identification is suggestive, but rather, whether the in-court identification is reliable based on independent recollections as assessed under the totality of the circumstances. *State v. Dixon,* 657 S.W.2d 632 (Mo.1983); *State v. Littleton,* 649 S.W.2d 225, 227 (Mo. banc 1983). Here, Dedra Herdeg had an opportunity to observe defendant face-to-face in broad daylight and converse with him. She testified she was positive that he was the man who came into the station that Sunday morning. There was no evidence in the record that the witness' viewing of defendant's photograph under hypnosis had any affect or could have had any affect on her in-court identification of defendant. We find no manifest injustice or miscarriage of justice on the record here.

■ In defendant's second point, he asserts trial court error because of improper argument by the prosecuting attorney during closing argument. Defendant neither objected to the prosecutor's remarks, nor raised them in his motion for new trial, preserving nothing for appellate review. *State v. Mason,* 588 S.W.2d 731, 737 (Mo. App.1979). Nonetheless, we have examined defendant's point under Rule 30.20 and conclude that plain error did not occur.

■ In defendant's next point, he alleges that the statute which sets forth the aggravating factor to be considered by the jury in the sentencing portion of the trial was unconstitutional. He also alleges that the instruction submitting this issue to the jury was defective. Defendant's point fails for two reasons. First, defendant was given the lesser of the two possible sentences for the crime of capital murder. Any defect in the statute or the instruction setting forth the aggravating factor which would have allowed the jury to impose the death sentence did not prejudice him. *State v. Thomas,* 625 S.W.2d 115, 126 (Mo.1981). Second, the precise constitutional contention urged here was rejected in *State v. Williams,* 652 S.W.2d 102, 112–13 (Mo. banc 1983).

■ In his next point, defendant contends the trial court erred in overruling his motion to dismiss the information on the ground that the State of Missouri violated the Interstate Agreement on Detainers Act and unlawfully removed defendant from the State of Missouri to the State of Illinois, and thereafter back to the State of Missouri. On the same facts, this contention was rejected in *State v. Williams,* 652 S.W.2d 102, 109–10 (Mo. banc 1983) and is without merit.

■ Defendant alleges that the trial court erred in allowing the state to introduce at trial a .45 caliber bullet found in his

car because it was the product of an illegal search and seizure.

Even though the existence of the .45 caliber bullet was disclosed to defendant before trial, no pre-trial motion to suppress was filed. At trial, defendant made two separate objections. First, that the bullet was "too remote in evidentiary value to be admitted," which the trial court overruled. The second ground was that the bullet was the product of an illegal search because the search warrant was directed to drugs, not bullets. On this latter point, Officer Frank Brown, who conducted the search, was brought into chambers and a discussion was held off the record. At that point, defendant's attorney stated: "I withdraw the objection based on the search warrant of the finding of the Federal bullet." Frank Brown was then sworn. Defendant's attorney renewed his objection that the bullet was too remote in evidentiary value. He stated:

> Judge, we have no objection. We have an objection already ruled upon in terms of remoteness to this case. The judge overruled on that basis. As long as we have the understanding that objection is preserved, we will not raise that objection in front of the jury when it is offered, and as far as we are concerned, whatever officer—this officer who found the bullet can say he found a bullet and we can put it in.
>
> THE COURT: Your objection is preserved on the record.

The proceedings then returned to open court and Frank Brown testified that he found an unfired .45 caliber Federal brand bullet in defendant's car. Defendant only intended to preserve his objection that the bullet was too remote in evidentiary value and expressly abandoned his objection to introduction of the bullet on the ground that it was the product of an illegal search and seizure. Since he abandoned his objection on that ground, he is precluded from raising this issue on appeal. *State v. Williams,* 566 S.W.2d 841 (Mo.App.1978); *State v. Hunter,* 530 S.W.2d 432 (Mo.App.1975). We find no merit to this point.

Defendant has filed a *pro se* brief which raises a number of points. We shall only consider those points not already raised by counsel.

In his first point, defendant alleges the trial court erred in failing to grant the motion for judgment of acquittal at the conclusion of the entire case because the state's prime witness, John Morgan, an admitted thief and drug addict, was an inherently unreliable witness. In determining the sufficiency of the evidence to support the verdict, the court accepts as true all evidence whether circumstantial or direct, tending to prove defendant guilty, together with all reasonable inferences supportive of the verdict. *State v. Brooks,* 618 S.W.2d 22, 23 (Mo. banc 1981). The determination of the credibility of a witness is within the peculiar province of the jury. It was for the jury to decide how much credence to give Morgan's testimony. *State v. Newberry,* 605 S.W.2d 117, 121 (Mo.1980). The record amply demonstrates the verdict is supported by substantial evidence.

In his next point, defendant asserts that the instructions on capital murder, second degree murder and manslaughter failed to adequately articulate a culpable mental state. We need not entertain his allegations of error against the second degree and manslaughter instructions because defendant was not convicted of those offenses. We have examined the capital murder instruction and find no merit to his contention.

In his next point, he alleges that he presented a "prima facie case of ineffective assistance of trial counsel" and that he should have been granted a new trial on that basis. Ordinarily, it is inappropriate to review the contention of ineffective assistance of counsel on direct appeal. The issue can best be explored and full disclosure of the pertinent facts can be obtained in a proceeding under Rule 27.26. *State v. Robinson,* 551 S.W.2d 309, 312 (Mo.App.1977). See *State v. Bromwell,* 631 S.W.2d 698 (Mo.App.1982); *State v. Hamell,* 561 S.W.2d 357, 361 (Mo.App.1977). The record here

fails to allow meaningful review of defendant's claim and it is denied without prejudice.

In his last point, defendant contends that he has been denied due process of law and should be discharged because "legal documents needed to properly prepare this appeal brief have been taken from appellant by the warden of the Missouri State prison." We note that similar relief was rejected by our Supreme Court in *State v. Williams,* 652 S.W.2d 102, 115 (Mo. banc 1983) and the United States Supreme Court in *Williams v. Missouri,* —— U.S. ——, 103 S.Ct. 746, 74 L.Ed.2d 966 (1983). We find no merit to this point.

Affirmed.

DOWD, C.J., CRIST, J., and IVAN LEE HOLT, Jr., Special Judge, concur.